[No. B197576. Second Dist., Div. Three. July 14, 2008.]

SALVADOR MORA, Plaintiff and Appellant, v.
HOLLYWOOD BED & SPRING et al., Defendants and Respondents.

## COUNSEL

Wesierski & Zurek, Frank J. D'Oro and Paul J. Lipman for Plaintiff and Appellant.

Yoka & Smith, David T. McCann and Christopher P. Leyel for Defendant and Respondent Hollywood Bed & Spring.

Haight Brown & Bonesteel, William O. Martin, Jr., Jules S. Zeman and R. Bryan Martin for Defendant and Respondent Larry Harrow.

## OPINION

**CROSKEY, J.**—Salvador Mora appeals a summary judgment in favor of his former employer, Hollywood Bed & Spring (Hollywood Bed), and its president, Larry Harrow. Mora sued defendants for damages after a power

press machine crushed his arm. He alleges that the machine lacked an adequate guard to protect against injury at the point of operation. He seeks damages pursuant to Labor Code section 4558,[1] which authorizes an employee's action against an employer for personal injuries caused by the employer's knowing removal of or failure to install a point of operation guard on a power press if certain conditions are met. Mora contends there are triable issues of fact as to whether the statutory conditions are satisfied. We conclude that he has shown no prejudicial error and affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *Factual Background*

Hollywood Bed manufactures metal bedframes, bedrails, rollaway beds, and similar products and parts. Hollywood Bed uses several power press machines in its operations, including three machines of different sizes manufactured by The Minster Machine Company (Minster), a model 5, a model 6, and a model 7. A power press shapes material by pressing it against a die.

Minster manufactured the model 6 machine in 1940. At the time of its manufacture, the machine was not equipped with a guard to protect against an intrusion into the point of operation, meaning the area where the pressing takes place, when the pressing apparatus was in motion. The machine originally was operated by use of a foot treadle. The machine was modified in 1978 by adding an electric air cylinder actuation system, a control panel, and a plastic moveable gate guard. Those modifications apparently were performed by Fredric Engineering Co., Inc. The plastic guard was designed to protect the user by blocking access to the point of operation when the pressing apparatus was in motion.

Hollywood Bed purchased the model 6 machine used from a dealer in the early 1980's. The plastic guard was still affixed to the machine at that time. Hollywood Bed constructed additional guards on the sides of the machine. Minster sent Hollywood Bed a letter in August 1988. The letter referred to another power press that Hollywood Bed had recently purchased, stated that the power press might not comply with federal OSHA (Occupational Safety and Health Act) standards, and enclosed Minster's power press safety manual and other safety bulletins. Minster sent another letter to Hollywood Bed in October 1998. The letter referred to two power presses other than the model 6 machine, stated that they might not comply with OSHA standards, and enclosed Minster's power press safety manual and other safety bulletins.

Hollywood Bed employed Mora as a power press operator beginning in approximately February 2000. By that time, the plastic guard was still affixed

---

[1] All statutory references are to the Labor Code unless stated otherwise.

to the model 6 machine but had been disconnected from the controlling mechanism and was inoperable. The front opening to the point of operation was unprotected.

Mora was operating the model 6 machine on August 13, 2005. An air nozzle designed to blow parts away from the point of operation after pressing was misdirected, so he reached into the machine to retrieve a part and adjust the nozzle. While he was reaching into the machine with both hands, his stomach pushed against the lever that activated the machine. The machine crushed his left hand.

### 2. *Trial Court Proceedings*

Mora filed a complaint against Hollywood Bed, Harrow, and others in December 2005. He alleged that Hollywood Bed and Harrow knowingly removed or failed to install a point of operation guard on the power press, that they specifically authorized that action or omission, and that he suffered injury as a result. He also alleged product liability counts against other defendants.

Harrow moved for summary judgment, arguing that the manufacturer never informed defendants that a point of operation guard was necessary and that they never specifically authorized the removal of a point of operation guard. Harrow argued further that a point of operation guard was affixed to the machine at the time of the injury and that defendants therefore could not be liable for failure to install a guard. Hollywood Bed moved for summary judgment on the same grounds and also argued that defendants never knowingly removed or failed to install a point of operation guard.

Mora argued in opposition that statements in the Minster safety manual showed that the manufacturer required a point of operation guard, and that the manufacturer conveyed that information to defendants in letters and in the safety manual. He argued further that the plastic shield installed on the machine was inoperable and that defendants specifically authorized the removal of guards previously installed on the machine. Harrow filed objections to "certain portions of plaintiff's separate statement of undisputed material facts." Hollywood Bed filed objections to specific items of evidence submitted by Mora.

The court denied Harrow's summary judgment motion on January 10, 2007. The court concluded that there were triable issues of fact as to whether the plastic guard affixed to the machine at the time of injury was a functioning point of operation guard and whether the manufacturer informed Harrow that a point of operation guard was needed. The court determined that

Harrow's objections to Mora's separate statement did not identify the specific evidence objected to as required by California Rules of Court, rule 3.1354(b), and therefore overruled the objections.

Harrow filed an ex parte application for an order clarifying the denial of his summary judgment motion or vacating the denial pending a ruling on the summary judgment motion by Hollywood Bed. The court granted the application on February 2, 2007, by vacating the denial.

The court granted Hollywood Bed's summary judgment motion on February 5, 2007. The minute order granting the motion stated that (1) neither the safety manual nor the letters from the manufacturer identified the model 6 machine, (2) there was no evidence that the manufacturer knew of the presence of that particular power press, and (3) the manufacturer never communicated with Hollywood Bed or Harrow concerning that power press. The court concluded that Hollywood Bed was entitled to summary judgment because Mora could not establish that the manufacturer had informed defendants that the model 6 machine was required to have a point of operation guard. The court concluded further that Mora failed to controvert Hollywood Bed's evidence that it never specifically authorized the removal of or failure to install a point of operation guard. The court also construed Hollywood Bed's objections to Mora's separate statement as objections to evidence and sustained the objections. The court stated that the issues raised in Harrow's summary judgment motion were identical to those raised in Hollywood Bed's motion, and granted Harrow's motion for the same reasons.

The court entered a judgment in favor of Hollywood Bed and Harrow and against Mora in March 2007. Mora timely appealed the judgment.

## *CONTENTIONS*

Mora contends (1) defendants specifically authorized the failure to install a point of operation guard by failing to modify the power press despite their awareness of an obvious risk of serious injury; (2) the manufacturer informed defendants that a point of operation guard was required; (3) defendants knowingly removed a point of operation guard that they previously had installed; and (4) the sustaining of Hollywood Bed's evidentiary objections was error.

Hollywood Bed and Harrow contend (1) the manufacturer did not require any particular point of operation guard for the model 6 machine; (2) the manufacturer did not inform defendants of such a requirement "at the time of acquisition, installation, or manufacturer-required modification of the power press" (§ 4558, subd. (a)(2)); (3) the power press had a point of operation

guard at the time of the injury, so defendants cannot be liable for failure to install; (4) defendants did not specifically authorize the removal of or failure to install a point of operation guard; and (5) defendants neither installed the plastic guard nor physically removed it, and therefore cannot be liable for removal.

## DISCUSSION

### 1. Standard of Review

A party is entitled to summary judgment only if there is no triable issue of material fact and the party is entitled to a judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) A defendant moving for summary judgment must show that one or more elements of the plaintiff's cause of action cannot be established or that there is a complete defense. (*Id.*, subd. (p)(2).) A defendant can satisfy its burden by presenting evidence that negates an element of the cause of action or evidence that the plaintiff cannot reasonably obtain needed evidence. (*Kahn v. East Side Union High School Dist.* (2003) 31 Cal.4th 990, 1003 [4 Cal.Rptr.3d 103, 75 P.3d 30].) If the defendant meets this burden, the burden shifts to the plaintiff to set forth "specific facts" showing that a triable issue of material fact exists. (Code Civ. Proc., § 437c, subd. (p)(2).) We review the trial court's ruling de novo, liberally construe the evidence in favor of the opposing party, and resolve all doubts concerning the evidence in favor of the opposing party. (*Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 460 [30 Cal.Rptr.3d 797, 115 P.3d 77].)

### 2. Labor Code Section 4558

Section 4558 establishes an exception to the workers' compensation exclusivity rule (§§ 3601, subd. (a), 3602, subd. (a)) applicable to certain actions for personal injury or death arising from the use of a power press machine.

"An employee, or his or her dependents in the event of the employee's death, may bring an action at law for damages against the employer where the employee's injury or death is proximately caused by the employer's knowing removal of, or knowing failure to install, a point of operation guard on a power press, and this removal or failure to install is specifically authorized by the employer under conditions known by the employer to create a probability of serious injury or death." (§ 4558, subd. (b).)

"No liability shall arise under this section absent proof that the manufacturer designed, installed, required, or otherwise provided by specification for the attachment of the guards and conveyed knowledge of the same to the

employer. Proof of conveyance of this information to the employer by the manufacturer may come from any source." (§ 4558, subd. (c).)

" 'Failure to install' means omitting to attach a point of operation guard either provided or required by the manufacturer, when the attachment is required by the manufacturer and made known by him or her to the employer at the time of acquisition, installation, or manufacturer-required modification of the power press." (§ 4558, subd. (a)(2).) " 'Removal' means physical removal of a point of operation guard which is either installed by the manufacturer or installed by the employer pursuant to the requirements or instructions of the manufacturer."[2] (§ 4558, subd. (a)(5).) " 'Specifically authorized' means an affirmative instruction issued by the employer prior to the time of the employee's physical injury or death, but shall not mean any subsequent acquiescence in, or ratification of, removal of a point of operation safety guard."[3] (§ 4558, subd. (a)(6).)

3. *Mora Failed to Create a Triable Issue As to Whether Defendants Specifically Authorized the Failure to Install or Removal of a Guard*

██ An employer can be liable for damages based on the failure to install or removal of a point of operation guard only if the requirements of section 4558 are satisfied, including that the employer "specifically authorized" the failure to install or removal. (*Id.*, subd. (b).) As defined in the statute, "specifically authorized" requires an "affirmative instruction" by the employer, as distinguished from mere acquiescence in or ratification of an act or omission. (*Id.*, subd. (a)(6).)

██ The meaning of "specifically authorized" as defined in the statute is a question of statutory construction. Our task in construing a statute is to ascertain the legislative intent so as to effectuate the purpose of law. (*Hassan v. Mercy American River Hospital* (2003) 31 Cal.4th 709, 715 [3 Cal.Rptr.3d 623, 74 P.3d 726].) The statutory language ordinarily is the most reliable indicator of legislative intent. (*Ibid.*) We give the words of the statute their ordinary and usual meaning and construe them in the context of the statute as a whole and the entire scheme of law of which it is a part. (*State Farm Mutual Automobile Ins. Co. v. Garamendi* (2004) 32 Cal.4th 1029, 1043 [12 Cal.Rptr.3d 343, 88 P.3d 71].) If the language is clear and a literal construction would not result in absurd consequences that the Legislature did not

---

[2] "Physical removal, for the purpose of liability under section 4558, means to render a safeguarding apparatus, whether a device or point of operation guard, dysfunctional or unavailable for use by the operator for the particular task assigned." (*Bingham v. CTS Corp.* (1991) 231 Cal.App.3d 56, 68 [282 Cal.Rptr. 161].)

[3] Section 4558, subdivision (a) also defines "power press," "employer," and "manufacturer."

intend, the plain meaning governs. (*Coalition of Concerned Communities, Inc. v. City of Los Angeles* (2004) 34 Cal.4th 733, 737 [21 Cal.Rptr.3d 676, 101 P.3d 563].) If the language is ambiguous, we may consider a variety of extrinsic aids, including the purpose of the statute, legislative history, and public policy. (*Ibid.*)

■ The statutory definition of "specifically authorized" unambiguously requires an "affirmative instruction" by the employer. (§ 4558, subd. (a)(6).) The ordinary meaning of the words "affirmative instruction" in this context is an express directive statement, rather than an implied statement or tacit acquiescence. Mora cites no evidence that defendants expressly directed the failure to install or the removal of a point of operation guard. Instead, Mora contends "specifically authorized" has another meaning.

Mora contends *Flowmaster, Inc. v. Superior Court* (1993) 16 Cal.App.4th 1019 [20 Cal.Rptr.2d 666] (*Flowmaster*) supports the proposition that an employer's failure to modify a power press despite the employer's awareness of an obvious risk of serious injury constitutes a specific authorization within the meaning of the statute. The defendant in *Flowmaster* was both the plaintiff's employer and the power press manufacturer. (*Id.* at p. 1024.) *Flowmaster* stated, "The issues before us, which have not heretofore been resolved, center on the definition of 'manufacturer,' and specifically whether that term includes an employer; and the meaning of the terms 'provided' or 'required' by the manufacturer, where, as here, there is no manufacturer other than the employer." (*Id.* at p. 1027.) The court stated further, "Obviously, when proceeding against an employer-manufacturer, the employee will never be able to prove that a separate entity manufacturer provided or required a point of operation guard." (*Id.* at p. 1031, fn. 6.)

■ *Flowmaster, supra*, 16 Cal.App.4th 1019, held that the defendant could be liable for failure to install a point of operation guard if either (1) the defendant's own design provided for a guard that was removed or never installed, or (2) the defendant was actually aware of the risk of serious injury yet "deliberately omitted" a guard from the design and manufacture of the power press. (*Id.* at p. 1031.) The court stated further that the plaintiff also must prove that the defendant "specifically authorized" the failure to install or removal, and stated, "[s]pecific authorization demands evidence of an affirmative instruction or other wilful acts on the part of the employer despite actual knowledge of the probability of serious harm. [Citation.]" (*Id.* at p. 1032.) *Flowmaster* concluded that there were triable issues of fact precluding summary judgment as to "whether a point of operation guard was 'required' " and "whether [the defendant] specifically authorized noninstallation of a point of operation guard on the ascending cycle by wilfully failing to modify the design and assembly of the press to include the required safety device." (*Id.* at pp. 1032–1033.)

The primary holding in *Flowmaster, supra,* 16 Cal.App.4th 1019, concerned the application of section 4558, subdivision (c) in circumstances where the employer is also the power press manufacturer. *Flowmaster* recognized that an employer that is also the power press manufacturer is unlikely to have "conveyed knowledge" (§ 4558, subd. (c)) to itself concerning the need for a point of operation guard, and fashioned a rule to accomplish the purposes of the statute in circumstances that the Legislature did not anticipate, that is, where the employer is also the manufacturer. *Flowmaster* also held that "specifically authorized" is not limited to an "affirmative instruction," but can include "other wilful acts on the part of the employer despite actual knowledge of the probability of serious harm." (*Flowmaster,* at p. 1032.) *Flowmaster* did not explain the rationale for the latter holding, but apparently relied on a rationale similar to that supporting its primary holding. We presume that the holding with respect to "specifically authorized" was based on the conclusion that an employer that is also the power press manufacturer is unlikely to have issued an "affirmative instruction" (§ 4558, subd. (a)(6)) to remove or not to install a point of operation guard, and that the purposes of the statute would be defeated if the plaintiff were required to prove an "affirmative instruction" in those circumstances. *Flowmaster* is distinguishable because the employer here was not the power press manufacturer.

Mora also argues that *Bingham v. CTS Corp., supra,* 231 Cal.App.3d 56, held that an employer "specifically authorized" the removal of a guard by rendering the guard inoperable. *Bingham* did not so hold. The employer in *Bingham* argued that particular point of operation protection devices were not "guards" within the meaning of section 4558, that the manufacturer never "designed, installed, required, or otherwise provided by specification for the attachment of the guards" (*id.,* subd. (c)), and that there was no "physical removal" (*id.,* subd. (a)(5)) of the devices. (*Bingham, supra,* at pp. 62, 65–66, 67.) *Bingham* rejected each of those arguments and affirmed the judgment on a jury verdict. (*Id.* at pp. 65, 67, 68.) The employer did not argue that it never "specifically authorized" the removal of a guard, and *Bingham* did not address that issue.

■ We reject Mora's contention that defendants "specifically authorized" the failure to install a point of operation guard by failing to modify the power press despite their awareness of an obvious risk of serious injury. That contention is incompatible with the plain meaning of the statute, and the rule from *Flowmaster, supra,* 16 Cal.App.4th 1019, does not apply.

### 4. *Mora Has Shown No Prejudicial Error with Respect to the Evidentiary Rulings*

We need not discuss the merits of Hollywood Bed's evidentiary objections because the challenged evidence would not create a triable issue as to whether defendants "specifically authorized" the failure to install or removal of a point of operation guard, as we construe that language. The challenged evidence relates to other issues. Mora does not contend the challenged evidence shows an "affirmative instruction" (§ 4558, subd. (a)(6)), and we conclude that it does not. We therefore conclude that Mora has shown no prejudicial error. In light of our conclusions, we need not address the parties' other contentions.

### DISPOSITION

The judgment is affirmed. Defendants are entitled to recover their costs on appeal.

Klein, P. J., and Aldrich, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 10, 2008, S166143.