KENNARD, J., Dissenting.
Government Code section 66427.5 (section 66427.5) sets forth requirements for subdividing a mobilehome park for the purpose of converting it to resident ownership—that is, a mobilehome park in which the residents own, rather than rent, the parcels on which their mobilehomes are situated. The majority holds that when a mobilehome park is located within the coastal zone, a person or entity seeking to convert the park to resident ownership must comply not only with section 66427.5 but also with the California Coastal Act of 1976 (Pub. Resources Code, § 30000 et seq.; hereafter Coastal Act) and the Mello Act (Gov. Code, § 65590).
I disagree. Because subdividing a mobilehome park to convert it to resident ownership does not involve a change in the density or intensity of the property’s use, it is not a “development” within the meaning of the Coastal Act, and therefore it is not subject to regulation under that act. Nor does the Mello Act apply. The plain language of section 66427.5’s subdivision (e) shows that the Legislature intended section 66427.5 to displace other state laws such as the Mello Act.
I
Plaintiff Pacific Palisades Bowl Mobile Estates, LLC (Palisades Bowl), owns a mobilehome park with more than 170 units. The park is in the coastal zone across Pacific Coast Highway from Will Rogers State Beach in the City of Los Angeles (the City). In November 2007, after various discussions with City’s planning officials, Palisades Bowl attempted to file an application to convert its mobilehome park to resident ownership. City officials refused to accept the application, insisting it was incomplete because it did not include, among other things, a coastal development permit and a Mello Act affordable housing determination.
In January 2008, Palisades Bowl filed in superior court a petition for writ of mandate together with a complaint for declaratory and injunctive relief. Palisades Bowl alleged, among other things, that the City had improperly refused to accept its subdivision application and that the City lacks discretion *812 to impose any requirements other than those set forth in section 66427.5. Palisades Bowl requested a writ or injunction commanding the City to accept its application, deem it complete, and make a decision either approving or denying it.
The superior court issued a peremptory writ of mandate commanding the City to vacate its decision finding Palisades Bowl’s application incomplete, deem it complete, and evaluate it without regard to whether it complied with either the Coastal Act or the Mello Act. On the City’s appeal, the Court of Appeal reversed with directions to vacate the peremptory writ and enter judgment for the City. This court granted review.
II
This case presents issues of statutory construction. In construing statutes, a court aims “to ascertain the intent of the enacting legislative body so that we may adopt the construction that best effectuates the purpose of the law.” (Hassan v. Mercy American River Hospital (2003) 31 Cal.4th 709, 715 [3 Cal.Rptr.3d 623, 74 P.3d 726]; accord, Klein v. United States of America (2010) 50 Cal.4th 68, 77 [112 Cal.Rptr.3d 722, 235 P.3d 42]; Chavez v. City of Los Angeles (2010) 47 Cal.4th 970, 986 [104 Cal.Rptr.3d 710, 224 P.3d 41].) To achieve this goal, a court begins by looking to the words of the statute, “because the statutory language is generally the most reliable indicator of legislative intent.” (Hassan v. Mercy American River Hospital, supra, at p. 715; accord, Klein v. United States of America, supra, at p. 77; Chavez v. City of Los Angeles, supra, at p. 986.) If the statutory language is not ambiguous, its plain meaning governs. (In re Ethan C. (2012) 54 Cal.4th 610, 627 [143 Cal.Rptr.3d 565, 279 P.3d 1052]; People v. Toney (2004) 32 Cal.4th 228, 232 [8 Cal.Rptr.3d 577, 82 P.3d 778].)
The Coastal Act does not expressly require a permit for mobilehome park conversions to resident ownership, but it does require a permit for any “development.” (Pub. Resources Code, § 30600.) The issue, then, is whether a mobilehome park conversion to resident ownership is a “development” within the Coastal Act’s definition of that term as, among other things, a “change in the density or intensity of use of land, including, but not limited to, subdivision pursuant to the Subdivision Map Act . . . and any other division of land, including lot splits, except where the land division is brought about in connection with the purchase of such land by a public agency for public recreational use” (Pub. Resources Code, § 30106). Under the plain meaning of this definition, a mobilehome park conversion to resident ownership is not a “development” because it does not change the density or intensity of use of the land, but merely changes the form of its ownership. After the conversion, the same number of mobilehomes will remain in the same locations, each occupied by a single household.
*813 The majority concludes otherwise. It reasons that “by introducing a list of projects, including ‘subdivision,’ with the phrase ‘including, but not limited to,’ the Legislature in Public Resources Code section 30106 has explained that each listed project is a change in the intensity of use for purposes of the act . . . .” (Maj. opn., ante, at p. 795.) The majority states: “Any subdivision under the Subdivision Map Act thus is, by definition, a species of change in the density or intensity of use of land and is a ‘development.’ ” (Ibid., first italics added; see id. at p. 797 [“In short, all subdivisions, including mobile-home park conversions, are ‘developments’ for purposes of the Coastal Act.”].)
The majority’s approach leads to statutory constructions that the Legislature is unlikely to have intended. For example, if a statute defined “antique American car” as “any car manufactured in the United States before 1940, including, but not limited to, a Ford, Chevrolet, or Chrysler,” the majority’s approach would mean that every Ford, Chevrolet, and Chrysler by definition is an “antique American car,” regardless of where or when it was made. Such a construction would be nonsensical because it nullifies important elements in the statutory definition. I would construe this hypothetical statutory definition to mean that a Ford, Chevrolet, or Chrysler is an “antique American car” if, but only if, it was manufactured in the United States before 1940.
Another example, involving an actual statutory definition, is provided by People v. Arias (2008) 45 Cal.4th 169 [85 Cal.Rptr.3d 1, 195 P.3d 103] (Arias). At issue there was the meaning of Health and Safety Code section 11366.8, making it a crime to possess a “false compartment” in a vehicle. The statute defines “false compartment” as “any box, container, space, or enclosure that is intended for use or designed for use to conceal, hide, or otherwise prevent discovery of any controlled substance within or attached to a vehicle, including, but not limited to, . . . [|] . . . [f] . . . [o]riginal factory equipment of a vehicle that is modified, altered, or changed. . . .” (Health & Saf. Code, § 11366.8, subd. (d).) This court construed that provision as “excluding] from its definition of ‘false compartment’ a vehicle’s original factory equipment that has not been modified, altered, or changed in any way.” (Arias, supra, at pp. 173-174.)
The majority here cites Arias, supra, 45 Cal.4th 169, 181 for the proposition that whenever a statutory definition contains a list introduced by the phrase “including, but not limited to,” then every item on the list necessarily must, in every instance, fall within the statutory definition. (Maj. opn., ante, at p. 795.) The flaw in that reasoning becomes apparent if it is applied to the statutory definition at issue in Arias. Under the majority’s reasoning, as applied to Health and Safety Code section 11366.8, any modification of a vehicle’s original factory equipment by definition produces a false compartment, regardless of whether the modification meets the *814 statute’s requirement of being intended or designed for use to conceal a controlled substance. Surely this cannot be what the Legislature contemplated. I would construe the statute in Arias as meaning that modified original factory equipment is a “false compartment” if, but only if, it is “intended for use or designed for use to conceal, hide, or otherwise prevent discovery of any controlled substance within or attached to a vehicle” (Health & Saf. Code, § 11366.8, subd. (d)). By the same token, a subdivision or other division of land qualifies as a “development” under the Coastal Act if, but only if, it will result in a “change in the density or intensity of use of land” (Pub. Resources Code, § 30106). As this court explained in Arias, in construing a statutory definition, a court must be careful not to “render nugatory the qualifiers that the Legislature purposefully included . . . .” {Arias, supra, 45 Cal.4th at p. 181.)
To summarize: Because subdividing a mobilehome park under section 66427.5 for the purpose of converting it to resident ownership involves no change in the density or intensity of the land’s use, it is not a development under the Coastal Act, no coastal permit is required, and no conflict exists between section 66427.5 and the Coastal Act.
This leaves the Mello Act, which establishes housing requirements within the coastal zone for persons and families with low or moderate incomes. In particular, it prohibits authorizing the conversion or demolition of existing residential units occupied by persons and families of low or moderate income unless provision has been made for replacement with other similar units. The Mello Act expressly applies to the conversion of a mobilehome or mobile-home lot in a mobilehome park lot “to a condominium, cooperative, or similar form of ownership.” (Gov. Code, § 65590, subd. (g)(1).)
Section 66427.5 contains its own safeguards to avoid economic displacement of nonpurchasing tenants with low or moderate incomes. The subdivider (usually the mobilehome park’s owner) must offer each tenant the option to continue renting the space rather than buying it. (§ 66427.5, subd. (a).) If the tenant chooses to continue renting, section 66427.5 limits rent increases. (§ 66427.5, subd. (f).) For lower income households, increases cannot exceed the rise in the Consumer Price Index. (§ 66427.5, subd. (f)(2).) The subdivider also must survey all the tenants to find out if they favor the conversion to resident ownership and give copies of the survey results to the local agency as part of the subdivision application. (§ 66427.5, subd. (d).)
For mobilehome park conversions to resident ownership, application of the Mello Act is precluded by section 66427.5’s subdivision (e), which reads: “The subdivider shall be subject to a hearing by a legislative body or advisory agency, which is authorized by local ordinance to approve, conditionally approve, or disapprove the map. The scope of the hearing shall be *815 limited to the issue of compliance with this section.” (Italics added.) By limiting the issues at the hearing on the subdivision application to compliance with section 66427.5 itself, the plain language of this provision bars application of other state laws such as the Mello Act.
Reaching a different conclusion, the majority states that the language of section 66427.5’s subdivision (e) “can be construed to require a hearing devoted exclusively to the issue of economic displacement of tenants in addition to the procedures and hearings required by other state laws.” (Maj. opn., ante, at p. 805.) But nothing in the statutory language suggests that the Legislature intended such a cumbersome and inefficient system, mandating multiple hearings for piecemeal consideration of overlapping and redundant statutory requirements before a subdivision map may be approved. To subdivide a mobilehome park for conversion to resident ownership, section 66427.5 requires a single application and a single hearing limited to the question of compliance with section 66427.5, to be followed by approval or disapproval. Thus, section 66427.5 alone governs the subdivision map approval.
For the reasons stated above, I conclude that irrespective of whether a mobilehome park is located within the coastal zone, the person or entity seeking to convert the park to resident ownership must comply only with section 66427.5 and need not also comply with either the Coastal Act or the Mello Act. Therefore, I would reverse the judgment of the Court of Appeal and direct that court to affirm the superior court’s judgment.