BILL LOCKYER Attorney General SUSAN DUNCAN LEE Deputy Attorney General
THE HONORABLE JAY LA SUER, MEMBER OF THE STATE ASSEMBLY, has requested an opinion on the following questions:
1. With respect to a request for the address of an individual arrested by a law enforcement agency, where the requester declares under penalty of perjury that the request is made for a journalistic purpose, may the agency require that the requester present subscriber lists, distribution lists, copies of past publications, or proof of membership in a press trade association; display a press identification permit issued by a California law enforcement agency; or qualify as a journalist in a judicial action?
2. Does the requirement that address information not be used directly or indirectly, or furnished to another, to sell a product or service, require the requester to monitor subscribers or readers and prohibit them from using the information for commercial purposes?
 CONCLUSIONS
1. With respect to a request for the address of an individual arrested by a law enforcement agency, where the requester declares under penalty of perjury that the request is made for a journalistic purpose, the agency may not require that the requester present subscriber lists, distribution lists, copies of past publications, or proof of membership in a press trade association; display a press identification permit issued by a California law enforcement agency; or qualify as a journalist in a judicial action.
2. The requirement that address information not be used directly or indirectly, or furnished to another, to sell a product or service does not require the requester to monitor subscribers or readers and prohibit them from using the information for commercial purposes.
 ANALYSIS
The two questions presented for resolution concern a provision of the California Public Records Act (Gov. Code, §§ 6250-6276.48; "Act")[1] that restricts the release of information to the public about arrestees, witnesses, and crime victims. In order to give perspective to the specific restrictions involved, we first examine the context in which they are found.
The Act provides that "every person has a right to inspect any public record, except as hereafter provided." (§ 6253, subd. (a).) The overriding purpose of the Act is to increase freedom of information by giving the public access to information in the possession of government agencies. (Roberts v. City of Palmdale
(1993) 5 Cal.4th 363, 370; CBS, Inc. v. Block (1986)42 Cal.3d 646, 651.) However, the Legislature has exempted a variety of public records from disclosure (see, e.g., §§ 6254, 6275-6276.48), including a broad exemption for law enforcement investigative files. Specifically, subdivision (f) of section6254 provides an exemption for:
 "Records of complaints to, or investigations conducted by, or records of intelligence information or security procedures of, the office of the Attorney General and the Department of Justice, and any state or local police agency, or any investigatory or security files compiled by any other state or local police agency, or any investigatory or security files compiled by any other state or local agency for correctional, law enforcement, or licensing purposes, except that state and local law enforcement agencies shall disclose the names and addresses of persons involved in, or witnesses other than confidential informants to, the incident, the description of any property involved, the date, time, and location of the incident, all diagrams, statements of the parties involved in the incident, the statements of all witnesses, other than confidential informants, to the victims of an incident, or an authorized representative thereof, an insurance carrier against which a claim has been or might be made, and any person suffering bodily injury or property damage or loss, as the result of the incident. . . .
". . . . . . . . . . . . . . . . . . . . . . . . . .
 "Customer lists provided to a state or local police agency by an alarm or security company at the request of the agency shall be construed to be records subject to this subdivision.
 "Notwithstanding any other provision of this subdivision, state and local law enforcement agencies shall make public the following information, except to the extent that disclosure of a particular item of information would endanger the safety of a person involved in an investigation or would endanger the successful completion of the investigation or a related investigation:
 "(1) The full name and occupation of every individual arrested by the agency, the individual's physical description including date of birth, color of eyes and hair, sex, height and weight, the time and date of arrest, the time and date of booking, the location of the arrest, the factual circumstances surrounding the arrest, the amount of bail set, the time and manner of release or the location where the individual is currently being held, and all charges the individual is being held upon, including any outstanding warrants from other jurisdictions and parole or probation holds.
 "(2) Subject to the restrictions imposed by Section 841.5 of the Penal Code, the time, substance, and location of all complaints or requests for assistance received by the agency and the time and nature of the response thereto, including, to the extent the information regarding crimes alleged or committed or any other incident investigated is recorded, the time, date, and location of occurrence, the time and date of the report, the name and age of the victim, the factual circumstances surrounding the crime or incident, and a general description of any injuries, property, or weapons involved. . . .
 "(3) Subject to the restrictions of Section 841.5 of the Penal Code and this subdivision, the current address of every individual arrested by the agency and the current address of the victim of a crime, where the requester declares under penalty of perjury that the request is made for a scholarly, journalistic, political, or governmental purpose, or that the request is made for investigation purposes by a licensed private investigator. . . . Address information obtained pursuant to this paragraph may not be used directly or indirectly, or furnished to another, to sell a product or service to any individual or group of individuals, and the requester shall execute a declaration to that effect under penalty of perjury. Nothing in this paragraph shall be construed to prohibit or limit a scholarly, journalistic, political, or government use of address information obtained pursuant to this paragraph."[2]
Accordingly, in lieu of granting public access to criminal investigative files, the Act requires law enforcement agencies to disclose specified information derived from these files, generally including information about arrests, arrestees, witnesses, and crime victims.
The particular statutory provision at issue here is section6254, subdivision (f)(3), which imposes two conditions on public access to the current addresses of arrestees and crime victims. The first condition is that every person requesting address information must submit a declaration under penalty of perjury that the request is being made for an approved purpose, that is, "for a scholarly, journalistic, political, or governmental purpose, or . . . for investigation purposes by a licensed private investigator. . . ." The second condition is that every requester must also declare that the address information will not be used for a commercial purpose.
1. Verification of Journalistic Purpose
The first question to be resolved is whether a law enforcement agency may require certain forms of evidence to support a requester's declaration that his or her request is made for journalistic purposes. We conclude that an agency may not require such evidence in support of a declaration.
As a preliminary matter, we note that the forms of evidence suggested by the question appear to focus primarily on commercial news media. It is doubtful, however, that the field of journalism may be so limited. For example, courts have recently pointed out the widespread use of the Internet for the dissemination of information to the public. (See In re Stevens (2004)119 Cal.App.4th 1228, 1235-1236; Vo v. City of Garden Grove (2004)115 Cal.App.4th 425, 453 [conc. dis. opn. of Sills, J.].) State statutes define who is a "journalist" only for specified, limited purposes. (E.g., Cal. Const., art. I, § 2, subd. (b) [immunity of newsperson from contempt]; Code Civ. Proc., § 1986.1 [immunity for testimony given by journalist under subpoena]; Evid. Code, §1070 [immunity of newsperson from contempt]; see also §§ 6020-6027 [establishing standing as newspaper of general circulation].) In other respects, statutes appear to focus on the purpose behind the act of communication, rather than on the status of the actor. (E.g., Civ. Code, § 47, subds. (d), (e) [privileged publication or broadcast].) Similarly, in applying free-press privileges, case law mainly focuses on the actor's purpose, rather than the actor's status. (See, e.g., Delaney v.Superior Court (1990) 50 Cal.3d 785, 797-798, fn. 8 [newsperson's immunity not applicable to professional journalist who is not engaged in news gathering]; People v. Von Villas
(1992) 10 Cal.App.4th 201, 231-232 [newsperson's immunity applied to freelance activity even before freelancer had contract to write article]; Shoen v. Shoen (9th Cir. 1993) 5 F.3d 1289,1293 [qualified First Amendment privilege against compelled disclosure extends to any person who seeks, gathers, or receives material with intent to disseminate information to the public].) Case law has also applied the First Amendment to Internet access. (Ashcroft v. American Civil Liberties Union (2004)542 U.S. 656, 659-660; Clement v. California Department of Corrections
(9th Cir. 2004) 364 F.3d 1148.) Because we conclude that a sworn declaration of journalistic purpose is sufficient to qualify for access to address information, we need not resolve the issue of who is a "journalist."
Looking, then, at the language of section 6254, we find that in interpreting a statute, our primary purpose is to determine the Legislature's intent. (Hassan v. Mercy American River Hospital
(2003) 31 Cal.4th 709, 715; Esberg v. Union Oil Co. (2002)28 Cal.4th 262, 268.) Because the statutory language itself is generally the most reliable indicator of legislative purpose, our first priority is to examine the words of the statute, reading them in the context of the statute as a whole and of the body of law of which it is a part. (Hassan v. Mercy American RiverHospital, supra, 31 Cal.4th at p. 715; People v. Gardeley
(1996) 14 Cal.4th 605, 621; Adoption of Kelsey S. (1992)1 Cal.4th 816, 826.)
Moreover, in construing the Act's provisions, we are constrained by the following mandate of article I, section 3 of the California Constitution:
 "(b)(1) The people have the right of access to information concerning the conduct of the people's business, and, therefore, the meetings of public bodies and the writings of public officials and agencies shall be open to scrutiny.
 "A statute, court rule, or other authority, including those in effect on the effective date of this subdivision, shall be broadly construed if it furthers the people's right of access, and narrowly construed if it limits the right of access. . . ."
Since subdivision (f)(3) of section 6254 limits the public's right of access to information about arrestees, witnesses, and crime victims, we must construe it narrowly.
Bearing these rules in mind, we observe that section 6254, subdivision (f)(3), says nothing that could be construed as requiring a requester to provide any kind of a "press credential" in addition to a sworn declaration. Indeed, the statute does not address the identity or qualifications of the requester at all, but only the purpose of the request. That is, while the purpose of a given request must be journalistic, the requester need not be a journalist.
A review of the legislative history of section 6254 supports our determination that an agency may not require evidence in support of a declaration. Subdivision (f)(3) was added in 1995 (Stats. 1995, ch. 778, § 1.5) in response to law enforcement reports of a growing number of "boilerplate" requests for the names and addresses of arrestees, witnesses, and crime victims. (See Sen. Rules Com., Off. of Sen. Floor Analyses, Analysis of Sen. Bill No. 1059 (1995-1996 Reg. Sess.) as amended Aug. 31, 1995, pp. 2-3.) It was reported that address information was routinely being sold to "attorneys, doctors, chiropractors, and others" who then used the information to solicit business. (Id.
at p. 3.) To address this concern, Senate Bill No. 1059 at first proposed a complete ban on the release of address information. (See Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading of Sen. Bill No. 1059 (1995-1996 Reg. Sess.) as amended Mar. 29, 1995, p. 1.) The bill was subsequently amended to allow access to the information in the public interest for non-commercial purposes. (See Sen. Rules Com., Off. of Sen. Floor Analyses, Analysis of Sen. Bill No. 1059 (1995-1996 Reg. Sess.) as amended Aug. 31, 1995, p. 2; Assem. Com. on Pub. Safety, Rep. on Sen. Bill No. 1059 (1995-1996 Reg. Sess.) July 11, 1995 [proposed amendment].) One committee report summarized the effect of the amendment as follows: "Request for address information is to be declared under penalty of perjury and that the request is being made for scholarly, journalistic, political, or governmental purpose, or that the request is made for investigation purposes by a licensed private investigator." (Sen. Rules Com., Off. of Sen. Floor Analyses, Analysis of Sen. Bill No. 1059 (1995-1996 Reg. Sess.) as amended Aug. 31, 1995, p. 2.) No other requirements or forms of proof are mentioned in the legislative history.
Subdivision (f)(3) was thereafter amended in 2004 (Stats. 2004, ch. 937, § 2) in response to reports that "some individuals are obtaining address records for an ostensibly legitimate purpose and then sharing it with other individuals (for money or other consideration) who then use it for marketing purposes." (Sen. Judiciary Com., Com. on Assem. Bill No. 1933 (2003-2004 Reg. Sess.) as amended June 22, 2004, pp. 2-3.) Significantly, however, the requirement of a sworn declaration was not changed. "`[F]ailure to make changes in a given statute in a particular respect when the subject is before the Legislature, and changes are made in other respects, is indicative of an intention to leave the law unchanged in that respect.'" (Bishop v. City ofSan Jose (1969) 1 Cal.3d 56, 65; see Estate of McDill (1975)14 Cal.3d 831, 837-838.)
Finally, we note that subdivision (f) of section 6254 allows the withholding of requested information "to the extent that disclosure . . . would endanger the safety of a person involved in an investigation or would endanger the successful completion of the investigation or a related investigation." We note that a government agency opposing disclosure under the Act would bear the burden of proving that an exception to disclosure is required in a particular case. (See § 6255; Board of Trustees ofCalifornia State University v. Superior Court (2005)132 Cal.App.4th 889, 896; Gilbert v. City of San Jose (2003)114 Cal.App.4th 606, 610-611; City of Hemet v. Superior Court
(1995) 37 Cal.App.4th 1411, 1416.)
In answer to the first question, we conclude that, with respect to a request for the address of an individual arrested by a law enforcement agency, where the requester declares under penalty of perjury that the request is made for a journalistic purpose, the agency may not require that the requester present subscriber lists, distribution lists, copies of past publications, or proof of membership in a press trade association; display a press identification permit issued by a California law enforcement agency; or qualify as a journalist in a judicial action.
2. Monitoring Commercial Purposes
The second question to be resolved is whether a requester who obtains address information for a journalistic purpose is required to monitor subscribers or readers and prohibit them from using the information for commercial purposes. It has been suggested that, absent a duty to monitor, the statute would fail to achieve its objective: would-be commercial users could circumvent the rule simply by waiting for a qualified person to obtain and publish the address information and then use the published information to make solicitations. Supporting this argument is a rule of statutory construction stating that the Legislature is presumed not to engage in idle acts. (See Civ. Code, § 3532 ["The law neither does nor requires idle acts"]; Inre J.W. (2002) 29 Cal.4th 200, 210; Stafford v. Realty BondService Co. (1952) 39 Cal.2d 797, 805.)
Again, however, we note that in construing a statute, our primary purpose is to ascertain and effectuate the legislative intent. (Hassan v. Mercy American River Hospital, supra,
31 Cal.4th at p. 715; People v. Gardeley, supra, 14 Cal.4th at p. 621.) "`Where the words of a statute are clear, we may not add to or alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history.'" (Inre Jennings (2004) 34 Cal.4th 254, 265, quoting Burden v.Snowden (1992) 2 Cal.4th 556, 562.) "[W]e must be careful not to add requirements to those already supplied by the Legislature." (In re Jennings, supra, 34 Cal.4th at p. 265; see also RobertF. Kennedy Medical Center v. Belshé (1996) 13 Cal.4th 748,756-758.)
Here, the last sentence of subdivision (f)(3) of section 6254
permits a qualified requester to publish address information for a journalistic purpose: "Nothing in this paragraph shall be construed to prohibit or limit a scholarly, journalistic, political, or government use of address information obtained pursuant to this paragraph." While the statute prohibits the journalistic requester from obtaining address information in the first instance with an intent to use it "directly or indirectly, or [furnish it] to another, to sell a product or service," the statute contains no requirement that the journalistic requester monitor subsequent uses of the information once it is published.
To the extent that there is any ambiguity whether journalistic "use" of information is intended to include publication, the legislative history demonstrates that it is. The last sentence of subdivision (f)(3) was added to the statute in 2004. (Stats. 2004, ch. 228, § 2.) A Senate Judiciary Committee report on the proposed amendment stated in part:
 "The bill currently provides that the prohibition on marketing does not extend to journalistic products or services. This language was requested by representatives of news organizations, who were concerned that as media outlets who sell products containing the information in question, they would be covered by the bill's prohibition on furnishing information to another. For example, many newspapers publish community crime logs which are obtained through public request. By selling a paper containing address information, they might be construed to be `furnishing' the information to sell a product (their newspaper). The author agreed to their requested exemption." (Sen. Judiciary Com., Com. on Assem. Bill No. 1933 (2003-2004 Reg. Sess.) as amended June 22, 2004, pp. 3-4.)
The bill was later amended to expand the exemption to scholarly, political, and governmental uses. (Assem. Com. on Governmental Organization, analysis of Assem. Bill No. 1933 (2003-2004 Reg. Sess.), as amended Aug. 11, 2004, p. 1 ["Clarifies that this prohibition on furnishing addresses to another shall not be construed to apply to the existing exceptions to the rule which are for scholarly, journalistic, political, or governmental use"].)
We recognize that allowing address information to be published for journalistic purposes leaves open the possibility of commercial solicitation by subsequent users who are unrelated to the journalistic requester. That possibility, however, does not negate the statute's purpose of protecting a person's privacy. The statute as it stands substantially protects privacy interests by limiting the initial distribution of address information to those who do not intend to use it directly or indirectly for commercial purposes. The statute permits that limitation to be enforced by prosecution for perjury. It is not fatal to the statute that these means do not entirely foreclose the possibility of an invasion of someone's privacy. The Legislature may rationally "enact reform measures `one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind.' [Citation.]" (Brown v. SuperiorCourt (1971) 5 Cal.3d 509, 521.)
Furthermore, we are required to construe statutes to avoid possible constitutional infirmities. (United States v. SecurityIndustrial Bank (1982) 459 U.S. 70, 78; United States v.Delaware Hudson Co. (1909) 213 U.S. 366, 407-408; McClung v.Employment Development Dept. (2004) 34 Cal.4th 467, 477; Myersv. Philip Morris Companies, Inc. (2002) 28 Cal.4th 828,846-847.) Construing section (f)(3) of section 6254 as creating a duty to monitor the use of published information would raise serious questions about the statute's constitutionality.
The tension between freedom of speech and the right of privacy is readily apparent in cases where the government seeks to hold a journalist liable, either civilly or criminally, for publishing information that is true and that is a matter of public record, but that causes embarrassment or pain to the individual subject. (See Cox Broadcasting Corp. v. Cohn (1975) 420 U.S. 469, 489.) Although it remains an open question whether truthful publication may ever be punished consistent with the First Amendment (seeBartnicki v. Vopper (2001) 532 U.S. 514, 529), the United States Supreme Court has invariably come down on the side of freedom of speech in such cases (see The Florida Star v. B.J.F.
(1989) 491 U.S. 524, 530). "As a general matter, `state action to punish the publication of truthful information seldom can satisfy constitutional standards.'" (Bartnicki v. Vopper, supra,
532 U.S. at p. 527, quoting Smith v. Daily Mail Publishing Co.
(1979) 443 U.S. 97, 102.)
We note that subdivision (f)(3) of section 6254 has already been upheld against one constitutional challenge. In Los AngelesPolice Dept. v. United Reporting Publishing Corp. (1999)528 U.S. 32, the United States Supreme Court stated: "This is not a case in which the government is prohibiting a speaker from conveying information that the speaker already possesses. [Citation.] The California statute in question merely requires that if respondent wishes to obtain the addresses of arrestees it must qualify under the statute to do so [by submitting an appropriate sworn declaration]." (Id. at p. 40; see also id.
at pp. 42-43 (conc. opn. of Ginsburg, J.) ["It is true . . . that the information could be provided to and published by journalists, and § 6254(f)(3) would indeed be a speech restriction if it then prohibited people from using that published information to speak to or about arrestees. But the statute contains no such prohibition. Once address information is in the public domain, the statute does not restrict its use in any way."]; id. at p. 48 (dis. opn. of Stevens, J.) ["It is perfectly clear that California could not directly censor the use of this information or the resulting speech"].) If we construed section 6254, subdivision (f)(3), as imposing a duty upon journalistic requesters to monitor the use of address information after they had published it, and correspondingly to permit journalistic requesters to be punished for a subsequent commercial use, we would force the statute into suspect constitutional territory.
Finally, we believe that the Legislature did not intend such a result. As previously indicated, subdivision (f)(3) was amended in 2004, well after the United States Supreme Court's decision inUnited Reporting, and the Legislature made no attempt to amend the statute to curtail subsequent uses of address information. In amending legislation, the Legislature is presumed to know of existing judicial decisions and to act in light of them. (Estateof Banerjee (1978) 21 Cal.3d 527, 537.) The Legislature's failure to change the law in this respect, when the general subject was before it and it made other changes, indicates that the Legislature intended to leave the law as stood at the time of the court's decision in United Reporting. (See Estate ofMcDill, supra, 14 Cal.3d at pp. 837-838; Bishop v. City of SanJose, supra, 1 Cal.3d at p. 65.)
Accordingly, we conclude in answer to the second question that the requirement that address information not be used directly or indirectly, or furnished to another, to sell a product or service does not require the requester to monitor subscribers or readers and prohibit them from using the information for commercial purposes.
[1] All further references to the Government Code are by section number only.
[2] Penal Code section 841.5 concerns the disclosure of specified information to an arrested person or to a defendant in a criminal action.