[No. B231142. Second Dist., Div. Two. Sept. 20, 2012.]

MICHAEL ALEMAN et al., Plaintiffs and Appellants, v. AIRTOUCH CELLULAR, Defendant and Respondent.

COUNSEL

Knapp, Petersen & Clarke, André E. Jardini and K.L. Myles for Plaintiffs and Appellants.

Jones Day, Deborah C. Saxe and Brian M. Jorgensen for Defendant and Respondent.

## Opinion

**BOREN, P. J.**—Two members of a putative class—Daniel Krofta and Mary Katz (appellants)—appeal from a trial court order granting summary judgment against them. In this opinion, we examine the application of two provisions from Industrial Welfare Commission wage order No. 4-2001 (Cal. Code Regs., tit. 8, § 11040).

First, we find that appellant Krofta was not entitled to receive "reporting time pay"[1] for attending meetings at work, because all the meetings were scheduled and appellant worked at least half the scheduled time. Second, we find that appellant Krofta was not owed additional compensation for working "split shifts,"[2] because, on each occasion he worked a split shift, he earned more than the minimum amount required by the wage order. Third, we determine that the trial court properly found that appellant Katz released all claims against respondent AirTouch Cellular (doing business as Verizon Wireless) (AirTouch).

Next, we turn to the matter of attorney fees, which were awarded by the trial court in favor of AirTouch. In an earlier opinion, we reversed the trial court's fees award. We found that both appellants' claims were subject to Labor Code section 1194, a "plaintiffs only" fee-shifting statute. Subsequently, the Supreme Court granted review, as a similar attorney-fees-related issue was then pending in another case. Following issuance of *Kirby v. Immoos Fire Protection, Inc.* (2012) 53 Cal.4th 1244 [140 Cal.Rptr.3d 173, 274 P.3d 1160] (*Kirby*), the Supreme Court transferred this case back to us for reconsideration in light of *Kirby*. Now, reconsidering the matter, we determine that the split shift claim is subject to Labor Code section 1194, because the claim seeks to recover unpaid minimum wage compensation. However, a reporting time claim is brought to recover unpaid wages, and is therefore subject to Labor Code section 218.5, which allows a prevailing defendant to

---

[1] Relevant to this appeal, "reporting time pay" is defined in the following manner: "Each workday an employee is required to report for work and does report, but is not put to work or is furnished less than half said employee's usual or scheduled day's work, the employee shall be paid for half the usual or scheduled day's work, but in no event for less than two (2) hours nor more than four (4) hours, at the employee's regular rate of pay, which shall not be less than the minimum wage." (Cal. Code Regs., tit. 8, § 11040, subd. 5(A).)

[2] A "split shift" is "a work schedule, which is interrupted by non-paid non-working periods established by the employer, other than bona fide rest or meal periods." (Cal. Code Regs., tit. 8, § 11040, subd. 2(Q).) "When an employee works a split shift, one (1) hour's pay at the minimum wage shall be paid in addition to the minimum wage for that workday, except when the employee resides at the place of employment." (Cal. Code Regs., tit. 8, § 11040, subd. 4(C).)

recover attorney fees.[3] We conclude that the trial court must allocate the reasonable fees incurred by AirTouch in defending the reporting time claim and award those fees.

Finally, we decline to consider the putative class members' appeal of the trial court's denial of a motion for class certification, since the motion was denied without prejudice and the matter has not been finally decided.

## FACTUAL AND PROCEDURAL BACKGROUND

This case was brought by former employees of AirTouch. Plaintiffs worked mostly as "retail sales representatives" or "customer service representatives" at AirTouch stores and kiosks, selling cell phones, accessories, and cell phone service plans. Plaintiffs filed a putative class action against AirTouch in April 2007, alleging that AirTouch did not properly pay its nonexempt employees for attending mandatory store meetings.

The thrust of plaintiffs' claims was that AirTouch violated two separate provisions of Industrial Welfare Commission (IWC) wage order No. 4-2001 (Cal. Code Regs., tit. 8, § 11040), commonly known as "Wage Order 4." Plaintiffs claimed that AirTouch improperly failed to pay "reporting time pay" for days when employees were required to report to work just to attend work-related meetings. Plaintiffs also contended they were owed "split shift" compensation for days on which they attended a meeting in the morning and worked another shift later the same day. AirTouch contended that it did not violate the reporting time or split shift provisions of Wage Order 4, and that plaintiffs received all compensation to which they were entitled.

*Krofta Motion*

In July 2010, AirTouch moved for summary judgment against Daniel Krofta, one of the 17 named plaintiffs and putative class action representatives. AirTouch argued that because Krofta's salary was not at or near minimum wage, he was not entitled to additional compensation for working a split shift, and, because all meetings Krofta attended were scheduled and Krofta was paid for working the scheduled time, he was not owed reporting time pay.

---

[3] All subsequent unlabeled statutory references are to the Labor Code.

In support of its motion, AirTouch presented evidence that Krofta worked at its stores from October 2005 to October 2006, and that his salary ranged from $10.58 to $11.11 per hour, not including commissions. During his time at AirTouch, Krofta learned what his schedule would be for the following week from the store work schedule, which was posted by the store manager at least four days before the work week began, and which laid out the days and hours that each employee would work.

Like other employees, Krofta was required to attend occasional work-related meetings. Most of these were "store meetings," which would be held once or twice a month on Saturday or Sunday morning, before the store opened, and which would last an hour to an hour and a half. The meetings were scheduled in advance and listed on employees' work schedules, and they were recorded in AirTouch's electronic timekeeping system.

Krofta's timesheets from AirTouch showed that there were five occasions on which he was scheduled to work, and did work, less than four hours (possibly to attend meetings). Separately, the AirTouch timesheets showed there were five times when Krofta worked a split shift—described by the parties for purposes of this litigation as a short shift (generally a meeting) in the morning followed by a longer shift later the same day.

The bulk of the relevant facts was not disputed by Krofta, and Krofta acknowledged that he received payment for all hours reflected on his timesheets. Krofta contended, however, that he was owed additional compensation as reporting time pay for the five instances he worked less than four hours, and split shift premiums for the five times he worked a split shift. AirTouch contended that, as a matter of law, Krofta was not owed additional compensation. The summary judgment motion thus hinged on a legal determination of whether Wage Order 4 mandated reporting time and split shift pay for these 10 shifts.

The trial court agreed with AirTouch and found that under the clear meaning of Wage Order 4's reporting time and split shift provisions, given the evidence presented, Krofta was not entitled to either reporting time or split shift pay. The court entered summary judgment against Krofta and in favor of AirTouch.

*Katz Motion*

AirTouch also moved for summary judgment against Mary Katz in July 2010. Although Katz brought the same claims as Krofta, the motion against

Katz was not directly premised on the inapplicability of reporting time and split shift pay requirements. Instead, AirTouch argued that an agreement signed by Katz while the lawsuit was pending released all of her claims. The agreement was titled "Release of Claims Agreement" and included extensive language releasing AirTouch from "any and all claims."

In its separate statement of undisputed material facts, AirTouch stated that Katz signed the agreement in April 2008 in exchange for the right to exercise long-term incentive awards. After signing the release and exercising this right, she received a payment of $25,796.28.

In her opposition, Katz did not dispute any of the moving papers' material facts. Instead, Katz simply argued that she was owed reporting time and split shift pay, and that the release was "patently invalid as it cannot bar [Katz] from proceeding in an action to collect split shift premiums and reporting time pay to which she was undisputedly entitled."

The trial court found that Katz was not undisputedly owed reporting time and split shift compensation. Further, Katz received the incentive award payment, which she otherwise would not have been owed, by signing the release agreement. On this basis the court found that the release was valid and supported by consideration, and the court granted the summary judgment motion.

*Attorney Fees*

After summary judgment was granted against Krofta and Katz, AirTouch brought motions to recover attorney fees from both plaintiffs. AirTouch moved pursuant to section 218.5, which allows a prevailing party to recover reasonable fees "[i]n any action brought for the nonpayment of wages, fringe benefits, or health and welfare or pension fund contributions." Krofta and Katz opposed the motions by arguing that the actions were covered not by section 218.5, but instead by section 1194, which provides for recovery of fees only by the plaintiff in an action to recover unpaid minimum wage or overtime compensation. The trial court disagreed with Krofta and Katz and awarded AirTouch $146,000 in fees against Krofta and $140,000 in fees against Katz.

*Denial of Class Certification*

In September 2010, after AirTouch moved for summary judgment but prior to the court's rulings, all plaintiffs moved for class certification pursuant to

Code of Civil Procedure section 382. The trial court heard the matter on January 18, 2011, at the same time it heard AirTouch's motions for attorney fees against Krofta and Katz (and well after it had granted summary judgment against them). At the hearing, the trial court noted that the claims asserted by plaintiffs had already been judged meritless with respect to Krofta. The court suggested to the parties' counsel that the motion for class certification be heard after the issues of split shift and reporting time liability were resolved on appeal, since appeal was imminent and could potentially alter the posture of the case. Although it seems the suggestion was completely reasonable, counsel did not agree to delay resolution of the class certification motion. The trial court then stated it was denying the motion without prejudice. The court made clear that it did not view this ruling as a "death knell" appropriate for appellate review, however, because plaintiffs would be allowed to bring a new motion to certify the class.

The court's subsequent order denied the motion without prejudice on the basis that the court was not "satisfied that any of the named representatives have made an adequate showing that he or she is an adequate class representative." The court found that the putative class representatives had not shown they understood the possible risks of proceeding as named plaintiffs, including potentially being subject to large fees and costs awards. The order also held that plaintiffs had failed to fully address concerns of potential intraclass conflict.

*Appeal*

All plaintiffs filed a notice of appeal from the order denying the motion for class certification. Separately, Krofta and Katz filed notices of appeal from the judgments entered against them.

We initially issued our opinion in this matter on December 21, 2011. In June 2012, the Supreme Court directed us to reconsider the matter in light of *Kirby, supra,* 53 Cal.4th 1244, which we address in part III. of this opinion, below.

## DISCUSSION

Our review begins with the judgments against Krofta and Katz. Summary judgment must be granted if the papers show an absence of triable issues of material fact and that the moving party is entitled to judgment as a matter of

law. (Code Civ. Proc., § 437c, subd. (c).) A defendant meets its initial burden on summary judgment by showing that one or more elements of the plaintiff's causes of action cannot be established, or that the causes of action are subject to a complete defense. (Code Civ. Proc., § 437c, subd. (p)(2).) The burden then shifts to the plaintiff to set forth specific facts showing a triable issue of material fact exists. (*Ibid.*)

"A defendant is entitled to summary judgment if the record establishes as a matter of law that none of the plaintiff's asserted causes of action can prevail." (*Molko v. Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107 [252 Cal.Rptr. 122, 762 P.2d 46].) We review the trial court's decision de novo, determining independently whether the facts not subject to dispute support summary judgment. (*Intel Corp. v. Hamidi* (2003) 30 Cal.4th 1342, 1348 [1 Cal.Rptr.3d 32, 71 P.3d 296].) Doubts are resolved in favor of the party opposing the judgment, and we are not bound by the trial court's reasons for the summary judgment ruling. (*Conte v. Wyeth, Inc.* (2008) 168 Cal.App.4th 89, 97 [85 Cal.Rptr.3d 299]; *M.B. v. City of San Diego* (1991) 233 Cal.App.3d 699, 703–704 [284 Cal.Rptr. 555]; *Knapp v. Doherty* (2004) 123 Cal.App.4th 76, 85 [20 Cal.Rptr.3d 1].)

I. *Summary Judgment Was Proper as to Krofta*

The facts relevant to the motion for summary judgment against Krofta were largely undisputed. The issue that was in dispute was the proper interpretation of Wage Order 4. AirTouch argued, and the trial agreed, that under the plain language of Wage Order 4, Krofta was not entitled to additional compensation for reporting time or split shift pay.

No published California case has substantively examined the exact issues presented here. Nevertheless, our inquiry is relatively straightforward, since the pertinent language of Wage Order 4 is sufficiently clear. We find that the trial court properly determined that Krofta was not entitled to additional compensation for reporting time or split shift pay under Wage Order 4.

A. *IWC Wage Orders*

The IWC is empowered to promulgate regulations known as "wage orders" governing wages, hours, and working conditions in the State of California. (*Tidewater Marine Western, Inc. v. Bradshaw* (1996) 14 Cal.4th 557, 561 [59

Cal.Rptr.2d 186, 927 P.2d 296].) Currently, there are 16 effective wage orders, most of which cover specific industries. (*Martinez v. Combs* (2010) 49 Cal.4th 35, 50 [109 Cal.Rptr.3d 514, 231 P.3d 259]; Cal. Code Regs., tit. 8, §§ 11010–11160.) The terms of IWC wage orders are accorded great deference by California courts. (*Martinez*, at p. 61.)

The order at issue here, Wage Order 4, is titled "Order Regulating Wages, Hours, and Working Conditions in Professional, Technical, Clerical, Mechanical, and Similar Occupations." (Cal. Code Regs., tit. 8, § 11040.) Among other things, it defines and sets the compensation required for "reporting time pay" (Cal. Code Regs., tit. 8, § 11040, subd. 5), and defines and sets the pay required for a "split shift" (Cal. Code Regs., tit. 8, § 11040, subds. 2(Q), 4(C)).

## B. *Rules of Construction*

■ Wage orders are quasi-legislative regulations and therefore are construed in accordance with the ordinary principles of statutory interpretation. (*Collins v. Overnite Transportation Co.* (2003) 105 Cal.App.4th 171 [129 Cal.Rptr.2d 254].) ■ "Well-established rules of statutory construction require us to ascertain the intent of the enacting legislative body so that we may adopt the construction that best effectuates the purpose of the law." (*Hassan v. Mercy American River Hospital* (2003) 31 Cal.4th 709, 715 [3 Cal.Rptr.3d 623, 74 P.3d 726] (*Hassan*).)

Statutory language is generally the best indicator of legislative intent, and so we begin by examining the language of the statute (or regulation) itself, giving the words their ordinary and usual meaning. (*Hassan, supra*, 31 Cal.4th at p. 715.) We seek to avoid any interpretation that renders part of the statute " 'meaningless or inoperative' " or that makes any language mere surplusage. (*Id.* at pp. 715–716; see *Singh v. Superior Court* (2006) 140 Cal.App.4th 387, 392 [44 Cal.Rptr.3d 348].) When the language is clear, we apply the language without further inquiry. (*Hassan*, at pp. 715–716; *Singh*, at p. 392.) "In determining legislative intent, courts look first to the words of the statute itself: if those words have a well-established meaning . . . there is no need for construction and courts should not indulge in it." (*Arnett v. Dal Cielo* (1996) 14 Cal.4th 4, 24 [56 Cal.Rptr.2d 706, 923 P.2d 1].)

■ Only if the language is ambiguous and susceptible of more than one reasonable meaning do we consider "a variety of extrinsic aids, including the

ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part." (*Nolan v. City of Anaheim* (2004) 33 Cal.4th 335, 340 [14 Cal.Rptr.3d 857, 92 P.3d 350].)

### C. *Reporting Time Pay*

Krofta's asserted entitlement to reporting time pay is controlled by subdivision 5(A) of Wage Order 4, which regulates "reporting time pay" in the following manner: "Each workday an employee is required to report for work and does report, but is not put to work or is furnished less than half said employee's usual or scheduled day's work, the employee shall be paid for half the usual or scheduled day's work, but in no event for less than two (2) hours nor more than four (4) hours, at the employee's regular rate of pay, which shall not be less than the minimum wage." (Cal. Code Regs., tit. 8, § 11040, subd. 5(A).)

### 1. *Subdivision 5(A) is clear and unambiguous*

Krofta acknowledges that the work meetings he was required to attend were scheduled. He also acknowledges that he was never sent home from a scheduled period of work before he had worked at least half the scheduled period. He argues that, consistent with Wage Order 4's language and purpose, regardless of whether meetings were scheduled or whether he worked more than half of his schedule, AirTouch was required to pay no less than two hours' worth of wages. AirTouch disagrees. It contends that so long as meetings were scheduled and Krofta was furnished work for (and was paid for) at least half the scheduled time, no reporting time pay was required, even for meetings that lasted less than two hours.

To simplify, the issue may be framed by the following question: If an employee's only scheduled work for the day is a mandatory meeting of one and a half hours, and the employee works a total of one hour because the meeting ends a half hour early, is the employer required to pay reporting time pay pursuant to subdivision 5(A) of Wage Order 4 in addition to the one hour of wages?

The answer to this question is no, because the employee was furnished work for more than half the scheduled time. The employee would be entitled to receive one hour of wages for the actual time worked, but would not be entitled to receive additional compensation as reporting time pay. Although somewhat lengthy and cumbersome, Wage Order 4's reporting time pay provision is not ambiguous. There is only one reasonable interpretation of subdivision 5(A) of Wage Order 4 as it pertains to scheduled work—when

an employee is scheduled to work, the minimum two-hour pay requirement applies only if the employee is furnished work for less than half the scheduled time.[4]

This conclusion directly addresses Krofta's reporting time pay claim. Each period of work at issue, including meetings, was scheduled (at least four days in advance), and Krofta always worked at least half the duration of each period.

Krofta's interpretation of subdivision 5(A) of Wage Order 4—that "in no event shall an employer pay an employee for less than two hours of work when [the employee] is required to report"—improperly dispenses with a significant portion of the rule. If the entirety of subdivision 5(A) read "[e]ach workday an employee is required to report for work and does report, . . . the employee shall be paid . . . , in no event for less than two (2) hours . . ." then Krofta's interpretation would be correct. But this is not how the provision reads. The right to at least two hours of wages is conditional—it is dependent on the antecedent that an employee "is not put to work or is furnished less than half said employee's usual or scheduled day's work." (Cal. Code Regs., tit. 8, § 11040, subd. 5(A).) A reading that disregards this condition would render words of the provision meaningless, a result prohibited by the rules of statutory construction. (*Singh v. Superior Court, supra*, 140 Cal.App.4th at p. 392.) Every time Krofta was scheduled to report to work (whether for a meeting or otherwise), he was furnished at least half the scheduled day's work. He was therefore entitled to receive wages compensating him for the actual time worked, but was not owed reporting time pay.

The presence of the word "usual" in subdivision 5(A) of Wage Order 4 does not save Krofta's claim. Subdivision 5(A)'s pay requirement is triggered when an employee is furnished less than half of his or her "usual or scheduled day's work." The rules of statutory construction require us to give effect to each of the words "usual or scheduled day's work." (See *Hassan, supra*, 31 Cal.4th 709, 715–716.) In order to give each word meaning, a "usual" day's work must be different from a "scheduled" day's work— otherwise, the word "scheduled" would be unnecessary. This distinction is further compelled by the use of the word "or." (See *Price v. Starbucks Corp.* (2011) 192 Cal.App.4th 1136, 1146 [122 Cal.Rptr.3d 174] (*Price*) ["The use of the disjunctive 'or' in [subdivision 5(A)] is used in the ordinary sense, suggesting alternatives."], citing *In re Jesusa V.* (2004) 32 Cal.4th 588, 622 [10 Cal.Rptr.3d 205, 85 P.3d 2] [holding that the ordinary meaning of "or" is disjunctive (" ' "either this or that" ' ") rather than conjunctive].) Since each

---

[4] Thus, under the scenario above, if the employee was sent home after half an hour due to lack of work, the employee would be entitled to two hours of regular pay.

work period at issue was scheduled, the duration of Krofta's "usual" day's work at AirTouch is immaterial to the analysis of whether he was owed reporting time pay.[5]

■ Krofta points out that statutes governing employment conditions are liberally construed in favor of protecting employees. (*Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1103 [56 Cal.Rptr.3d 880, 155 P.3d 284] (*Murphy*).) While this is true, a general policy of liberal construction does not lead us to a different result here. (See *Arnett v. Dal Cielo, supra,* 14 Cal.4th at pp. 24–25 [a general policy of broad construction is not of significant consequence when a statute is only susceptible of one reasonable interpretation].) The clear language of subdivision 5(A) of Wage Order 4 dictates that when work is scheduled, reporting time is owed only when an employee is not furnished with half of his or her scheduled day's work. Liberally construing the language does not change this result.

### 2. *Recent case law does not compel a different result*

Krofta further argues that the recent case of *Price, supra,* 192 Cal.App.4th 1136, supports his interpretation of the reporting time pay provision. As with the instant case, the factual background was highly relevant to the court's determination in *Price.* The plaintiff in *Price* failed to attend work on a day he was scheduled, November 11, 2007. (*Id.* at p. 1139.) The next day, Price's branch manager at Starbucks left a voice mail asking Price to " 'come to the store on November 16, 2007, to have a talk.' " (*Ibid.*) Price went to the store on November 16, and was promptly fired. The meeting lasted about 45 seconds. (*Id.* at pp. 1139–1140.)

Starbucks paid Price two hours of reporting time pay for the 45-second meeting, but Price contended he was entitled to more. Division Three of this Court found that two hours of pay was proper under IWC wage order No. 5, subdivision 5(A),[6] writing: "If an employee is not scheduled to work or does not expect to work his usual shift, but must report to work for a meeting, the employee falls into the regulatory category of those employees called to work on their day off for a scheduled meeting. . . . [¶] . . . [¶] We do not agree with Price that he is entitled to receive more than the two-hour minimum; he did

---

[5] Krofta does not contend that he was called to work on a day off and was sent home after working a relatively short period, a situation that likely would require us to determine his "usual" day's work.

[6] The court in *Price* analyzed the reporting time pay requirements under IWC wage order No. 5 (Cal. Code Regs., tit. 8, § 11050), which applies to wages, hours, and working conditions in the "public housekeeping industry." This discrepancy is unimportant here, since subdivision 5(A) under wage order No. 5 is identical to subdivision 5(A) under wage order No. 4.

not report to work with the expectation that he would work a scheduled shift, but rather was scheduled to attend a meeting for an unspecified number of hours. . . . Price was not scheduled to work on November 16, and his expectation was he had been called to work for a meeting on his day off." (*Price, supra*, 192 Cal.App.4th at pp. 1146–1147.)

We do not agree with Krofta that *Price* supports his position. The differences in the pertinent facts are obvious. The plaintiff in *Price* was asked to come in for "a talk" on a day his schedule showed as a day off, the plaintiff was not given a particular time to come in, the plaintiff did not know the reason for being asked to come in, the plaintiff had no idea how long his "talk" with his manager would last, and the talk lasted a total of 45 seconds. In contrast, all the meetings at issue here were listed on Krofta's schedule, all had certain start times, all had expected topics and durations, and all lasted at least half of the expected duration.

Unlike the 45-second talk in *Price*, the AirTouch meetings could only be considered scheduled shifts of work. Krofta seeks to expand the holding in *Price* to say that a "scheduled meeting" cannot constitute "scheduled work." This is illogical. Anyone who has ever sat through a work-related meeting would certainly consider the meeting to be work. As long as the meeting is scheduled, it constitutes scheduled work.

### 3. *California's Department of Industrial Relations, Division of Labor Standards Enforcement (DLSE) manuals*

Krofta also notes how the *Price* decision cited to the DLSE's Operations and Procedures Manual. (See *Price, supra*, 192 Cal.App.4th at p. 1146.) *Price* quoted the manual's explanation of the "primary purpose of the reporting time regulation" as " 'to guarantee at least partial compensation for employees who report to work expecting to work a specified number of hours, and who are deprived of that amount because of inadequate scheduling or lack of proper notice by the employer.' (DLSE Operations and Procedures Manual (1989) § 10.88) . . . ." (*Price*, at p. 1146.) Nothing in our decision is inconsistent with this purpose. Krofta was never deprived of working the hours he expected because of deficient scheduling or lack of proper notice.

It is true, as emphasized by Krofta, that another DLSE manual, the Enforcement Policies and Interpretations Manual, states: "DLSE has been asked on a number of occasions how the Reporting Time provisions of the Orders affect a situation where the employer requires employees to attend a short training meeting, staff meeting or similar gathering under a variety of circumstances. Most common are: [¶] 1. Required meeting is scheduled for a day when the worker is not usually scheduled to work. The employer tells all

of the workers that attendance at the meeting is mandatory and a one- or two-hour shift is 'scheduled' for this meeting. For those workers not 'regularly scheduled' to work, the employee must be paid at least one-half of that employee's *usual or scheduled* day's work." (DLSE Enforcement Policies and Interpretations Manual (2002) § 45.1.4, p. 45-2.) It is not entirely clear from this language whether, under the DLSE's interpretation, Krofta would be entitled to reporting time pay, though it appears that the DLSE may contend an employee scheduled to attend a meeting is not "regularly scheduled" to work, and so is entitled to some form of reporting time pay. We need not get caught up in guesswork, however, since we are not bound by the DLSE's interpretation.

■ The DLSE is responsible for enforcing California's labor laws, including wage orders. (*Tidewater Marine Western, Inc. v. Bradshaw, supra,* 14 Cal.4th at pp. 561–562.) It does not promulgate wage orders. That is the role of the IWC. (*Ibid.*) Although the DLSE may prepare "a policy manual that is no more than a restatement or summary, without commentary, of the agency's prior decisions in specific cases and its prior advice letters," any attempt by the DLSE to "interpret [a] regulation in an enforcement policy of general application without following the [Administrative Procedure Act]" is void. (*Id.* at pp. 571, 574.) We are not obligated to follow the DLSE's interpretation of the wage order. (See *Murphy, supra,* 40 Cal.4th at p. 1105, fn. 7 ["While the DLSE's construction of a statute is entitled to consideration and respect, it is not binding and it is ultimately for the judiciary to interpret this statute."].)

Here, to the extent that the DLSE would conclude that attendance at a scheduled, mandatory meeting does not constitute a "scheduled day's work," such a conclusion would be inconsistent with the language of Wage Order 4, subdivision 5(A). In contrast to the nonbinding nature of DLSE determinations, courts show the IWC's wage orders "extraordinary deference, both in upholding their validity and in enforcing their specific terms." (*Martinez v. Combs, supra,* 49 Cal.4th at p. 61.) The specific terms of subdivision 5(A) do not reference "meetings," much less distinguish "scheduled meetings" from "scheduled work." The DLSE is not authorized to write additional terms into the wage order or promote an interpretation inconsistent with its actual terms.

### 4. *Subdivision 5(B)*

Finally, Krofta contends that the language of Wage Order 4, subdivision 5(B) supports his interpretation of Wage Order 4, subdivision 5(A). Subdivision 5(B) states: "If an employee is required to report for work a second time in any one workday and is furnished less than two (2) hours of work on the second reporting, said employee shall be paid for two (2) hours

at the employee's regular rate of pay, which shall not be less than the minimum wage." (Cal. Code Regs., tit. 8, § 11040, subd. 5(B).)

■ Subdivision 5(B) of Wage Order 4 does not aid Krofta's cause. In fact, it strongly supports AirTouch's position. Subdivision 5(B) reads as Krofta wishes Wage Order No. 4, subdivision 5(A) read. Under subdivision 5(B), an employee required to report to work a second time in a workday is entitled to at least two hours of pay. This automatic entitlement starkly contrasts with the conditional entitlement of subdivision 5(A). " 'When the Legislature uses materially different language in statutory provisions address-ing the same subject or related subjects, the normal inference is that the Legislature intended a difference in meaning.' " (*People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.* (2005) 37 Cal.4th 707, 717 [36 Cal.Rptr.3d 814, 124 P.3d 408].) The IWC was free to craft subdivision 5(A) so that it closely resembled subdivision 5(B). The fact that it did not do so provides further support for the conclusion that subdivision 5(A) mandates a minimum of two hours' pay only under certain conditions. As explained above, those condi-tions were not present here.

Accordingly, the trial court properly found that Krofta was not owed additional compensation for reporting time pay.

### D. *Split Shift Compensation*

Apart from the reporting time pay claim, Krofta argues that AirTouch failed to properly compensate him for working split shifts. Wage Order 4 defines a "split shift" as "a work schedule, which is interrupted by non-paid non-working periods established by the employer, other than bona fide rest or meal periods." (Cal. Code Regs., tit. 8, § 11040, subd. 2(Q).)

Krofta contends that he was owed additional compensation for working split shifts under subdivison 4(C) of Wage Order 4. Subdivison 4(C) is located under the section "4. Minimum Wages" heading of the wage order. It states: "When an employee works a split shift, one (1) hour's pay at the minimum wage shall be paid in addition to the minimum wage for that workday, except when the employee resides at the place of employment." (Cal. Code Regs., tit. 8, § 11040, subd. 4(C).)

Neither party disputes that there were five occasions during Krofta's time with AirTouch that he worked a short shift in the morning followed by a longer shift later the same day. Each of these occasions fell under Wage Order 4's definition of "split shift." The issue is whether further compensa-tion in addition to regular wages was owed pursuant to Wage Order 4, subdivison 4(C). AirTouch argued, and the trial court agreed, that additional

compensation was not owed because every time Krofta worked a split shift, he was paid a total amount greater than the minimum wage for all hours worked plus one additional hour.

To illustrate its argument, AirTouch prepared a chart showing amounts that Krofta was paid for split shifts, compared to the amounts a minimum wage worker would be owed pursuant to Wage Order 4, subdivison 4(C). As an example, on November 26, 2005, Krofta worked a total of eight hours. Because he was making $10.58 per hour at the time, he was paid a total of $84.64 (8 x $10.58). The minimum wage at the time was $6.75, so a minimum wage worker would be paid wages of $54 (8 x $6.75) plus, pursuant to subdivision 4(C), one additional "hour's pay at the minimum wage," for a total of $60.75 ($54 + $6.75). AirTouch contended that since subdivison 4(C) by itself required no greater payment for the workday than $60.75, the pay for an employee who earned more than that amount (like Krofta) would not be affected.

We agree that this analysis, which was followed by the trial court, is correct. This interpretation gives effect to each word of the provision. Unlike reporting time pay, which is accorded its own section in the wage order, subdivison 4(C) appears in the section of Wage Order 4 titled "Minimum Wages." Further, and even more importantly, the provision itself makes two references to the "minimum wage." To comply with the rules of statutory construction, each of these references must be given effect. (See *Hassan, supra*, 31 Cal.4th at pp. 715–716.)

The provision provides that one hour at the "minimum wage shall be paid in addition to the *minimum* wage for that workday" (Wage Order 4, subd. 4(c), italics added)—not the *regular* wage for that workday. Under the example given above, the minimum wage worker earned a total of $60.75 because he was entitled to "one (1) hour's pay at the minimum wage [($6.75)] . . . in addition to the minimum wage for that workday [(8 x $6.75 = $54)]." (*Ibid.*) While subdivison 4(C) applied to Krofta, the provision did not provide him with any tangible benefit, since the total amount of his regular pay was significantly higher than the minimum amount required by subdivison 4(C).

 No published California case has previously addressed this direct issue. However, although obviously not binding, a well-respected treatise (Chin et al., Cal. Practice Guide: Employment Litigation (The Rutter Group 2011)) has embraced the same interpretation of Wage Order 4, subdivison 4(C). The Rutter guide explains the provision as follows: "[A]n employee earning the minimum wage who works eight hours on a split shift is entitled to receive nine times the minimum hourly wage." (Chin, ¶ 11:682, p. 11-84 (rev. # 1, 2011).)

"This provision also applies to employees paid more than the minimum wage. However, such employees are only entitled to the difference between what they actually earned and what they would have earned had they been paid the minimum wage for their entire shift plus an extra hour." (*Id.* ¶ 11:683, p. 11-84 (rev. # 1, 2011).)[7]

This interpretation was also followed in the recent federal district court case *Galvez v. Federal Express Inc.* (N.D.Cal., Apr. 28, 2011, No. C07-2505 TEH) 2011 U.S.Dist. Lexis 46393 (*Galvez*).[8] That court cogently explained: "There is no dispute that the regulation applies to all workers and not just those making minimum wage—that is, that an employer must pay employees who work a split shift at least the minimum wage for the hours actually worked and, in addition, for one additional hour as a result of requiring a split shift. . . . [¶] . . . Although Plaintiffs correctly argue that workplace regulations must be construed broadly in favor of protecting employees, the Court finds that the protection at issue concerns minimum wages. The plain language of the split shift regulation reflects an intent to ensure that an employee who works a split shift must be compensated highly enough so that he or she receives more than the minimum wage for the time actually worked plus one hour." (2011 U.S.Dist. Lexis 46393 at pp. *8–*9.)[9]

Arguing against such an analysis, Krofta cites to *Murphy*, which stated, "When an employee is required to work a 'split shift' (is scheduled for two nonconsecutive shifts in the same day), the employer must pay the employee one additional hour of wages." (*Murphy, supra,* 40 Cal.4th at p. 1111.) Krofta contends that this single sentence from *Murphy* requires a finding that additional compensation is always required whenever any employee subject to Wage Order 4 works a split shift. We disagree. This statement from *Murphy* was dictum. The issues presented to the Supreme Court in *Murphy* were the applicable statute of limitations for a claim made pursuant to section 226.7, and whether a trial court can consider wage claims that were not presented in a prior administrative proceeding. (*Murphy,* at p. 1099.) *Murphy* cited to the split shift provision simply as one of several examples of a

[7] Thus, taking another example using the above scenario, if Krofta's salary had been $7 an hour in 2005, he would have benefited from Wage Order 4, subdivison 4(C). For working an eight-hour split shift, he would have been entitled to an extra $4.75 in pay ($60.75 - (8 x $7)).

[8] Although not binding, unpublished federal district court cases are citable as persuasive authority. (See *Olinick v. BMG Entertainment* (2006) 138 Cal.App.4th 1286, 1301, fn. 11 [42 Cal.Rptr.3d 268].)

[9] *Galvez* also noted that at a public meeting held in 1977, where the IWC met to adopt a revised statement of the basis of certain wage orders, a commissioner stated: "In Subdivison 4(C) the Commission continued the split-shift provision on the basis that a minimum wage worker's income should not be eroded by the additional expense involved in working a split-shift. *Some employee representatives asked that the [minimum wage] be paid in addition to whatever regular rate of pay was earned during the day, but most wage boards agreed that the premium should be paid in addition to the minimum wage for the hours worked.*"

"dual-purpose remedy that is primarily intended to compensate employees, but also has a corollary purpose of shaping employer conduct." (*Id.* at p. 1111.) Using the provision as an example, the court, in a single sentence (the sentence relied on by Krofta), briefly explained how split shift pay works. The court in *Murphy* did not examine the scope of subdivison 4(C)'s split shift requirement and, critically, did not consider the effect of Wage Order 4, subdivison 4(C)'s references to the "minimum wage." We do not believe that by briefly referencing the split shift provision, the court intended to declare a comprehensive rule of how the provision applies in every case.

The trial court appropriately held that Krofta was not owed additional compensation pursuant to Wage Order 4, subdivison 4(C). Summary judgment was therefore proper.

## II. *The Trial Court Did Not Err by Granting Summary Judgment Against Katz*

In moving for summary judgment against Katz, AirTouch argued that Katz released all claims by signing a release agreement. According to AirTouch, Katz signed the release agreement in April 2008 in exchange for the right to exercise long-term incentive awards, and that after signing the agreement and exercising this right, she received a payment of $25,796.28. Katz did not dispute any of these issues. Instead, she argued that her right to split shift and reporting time pay was undisputed, and so, as a matter of law, any release of these rights was ineffective.

As the matter was presented to the trial court, summary judgment was proper. The trial court correctly found the action directly controlled by the case of *Watkins v. Wachovia Corp.* (2009) 172 Cal.App.4th 1576 [92 Cal.Rptr.3d 409] (*Watkins*).

In *Watkins*, a plaintiff, upon termination of her employment, signed a release of all claims, including wage claims, in exchange for enhanced severance benefits. (*Watkins, supra*, 172 Cal.App.4th at p. 1584.) She pursued claims of unpaid overtime anyway, and argued that section 206.5, which prohibits employers from requiring employees to release claims for wages due unless payment of those wages has been made,[10] invalidated any release of claims for unpaid wages. (*Watkins, supra*, 172 Cal.App.4th at p. 1584.) The superior court and Division Three of this court disagreed, finding that the

---

[10] Section 206.5, subdivision (a), states: "An employer shall not require the execution of a release of a claim or right on account of wages due, or to become due, or made as an advance on wages to be earned, unless payment of those wages has been made. A release required or executed in violation of the provisions of this section shall be null and void as between the employer and the employee. Violation of this section by the employer is a misdemeanor."

release was effective. (*Id.* at p. 1587.) Division Three held that section 206.5 must be read in connection with section 206, which requires an employer in a wage dispute to pay, without condition, all amounts conceded to be due, but does not require unconditional payment of disputed amounts.[11] (*Watkins*, at pp. 1586–1587, citing *Chindarah v. Pick Up Stix, Inc.* (2009) 171 Cal.App.4th 796 [90 Cal.Rptr.3d 175].) "When a bona fide dispute exists, the disputed amounts are not 'due,' and the bona fide dispute can be voluntarily settled with a release and a payment—even if the payment is for an amount less than the total wages claimed by the employee." (*Watkins, supra,* 172 Cal.App.4th at p. 1587.) The release was enforceable because (i) the plaintiff received all wages which Wachovia conceded were due, (ii) she believed she had a claim for further overtime pay, and (iii) she voluntarily agreed to accept enhanced severance benefits in exchange for a release of all claims. (*Ibid.*)

The same analysis applies here. In opposing summary judgment, Katz did not dispute that the release, by its terms, covered her claims. She also did not dispute that she signed the release agreement in exchange for the right to exercise incentive awards, and that she received over $25,000 after exercising the option.[12]

Katz simply contended that AirTouch failed to pay split shift and reporting time pay, which, according to Katz, was undisputedly owed. She argued that pursuant to section 206.5, any release of these claims was unenforceable. This argument clearly failed. There was no question that AirTouch disputed her right to split shift and reporting time pay. These types of pay were not undisputedly owed, and Katz received consideration for releasing her disputed claims. The trial court, therefore, did not err by finding the release effective and granting summary judgment against Katz.

---

[11] Section 206, subdivision (a), states: "In case of a dispute over wages, the employer shall pay, without condition and within the time set by this article, all wages, or parts thereof, conceded by him to be due, leaving to the employee all remedies he might otherwise be entitled to as to any balance claimed."

[12] The trial court found that Katz's right to exercise the option for the award only accrued upon the signing of the release agreement. As stated in the trial court's tentative decision, the release "was supported by the grant of a right to exercise post-termination long term incentive awards otherwise not due." This issue went uncontested by Katz below and was not raised in her opening brief on appeal. In her reply brief, Katz cursorily argues for the first time that the award was a standard severance benefit already earned and owed. We decline to advance an argument that was not timely made. (See *Julian v. Hartford Underwriters Ins. Co.* (2005) 35 Cal.4th 747, 761, fn. 4 [27 Cal.Rptr.3d 648, 110 P.3d 903]; *Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.* (2000) 78 Cal.App.4th 847, 894–895, fn. 10 [93 Cal.Rptr.2d 364] [" ' "points raised in the reply brief for the first time will not be considered, unless good reason is shown for failure to present them before." ' "].) Even if we were to consider Katz's untimely argument, she has not provided any factual analysis with citations to evidence in the record to support it. Thus, we are unable to reverse on this basis.

III. *The Attorney Fees Award Was Partially Improper*

The trial court ordered that Krofta and Katz pay AirTouch's attorney fees in the amounts of $146,000 and $140,000, respectively, finding that their actions were governed by section 218.5. Krofta and Katz contend the trial court erred by applying section 218.5. They argue that the trial court should have applied section 1194 instead, which would have precluded a fees award in favor of AirTouch.

Previously, we found that both claims at issue—for split shift compensation and reporting time pay—were subject to section 1194, and therefore the trial court erred by awarding any fees to AirTouch. Following the filing of our prior opinion, the California Supreme Court granted review and deferred further action in the matter pending disposition of a related issue in *Kirby*. The opinion in that case, *Kirby, supra,* 53 Cal.4th 1244, was subsequently issued, and the instant matter was transferred back to us for reconsideration in light of *Kirby*. Now, reconsidering the matter, we find that *Kirby* dictates the claim for split shift compensation was subject to section 1194, but the claim for unpaid reporting time was subject to section 218.5.[13]

A. *Sections 218.5 and 1194*

Sections 218.5 and 1194 cover similar, though functionally exclusive, subjects. Section 218.5 provides, in pertinent part: "In any action brought for the nonpayment of wages, fringe benefits, or health and welfare or pension fund contributions, the court shall award reasonable attorney's fees and costs to the prevailing party if any party to the action requests attorney's fees and costs upon the initiation of the action. . . . [¶] This section does not apply to any action for which attorney's fees are recoverable under Section 1194." Section 1194, subdivision (a) states: "Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit."

---

[13] Following transfer of this case from the Supreme Court, the parties notified this court that they had agreed on the terms of a settlement and filed a joint request for dismissal of the appeal. However, while settlement of the case would render the appeal moot, it does not require that we dismiss the appeal. (See *Bay Guardian Co. v. New Times Media LLC* (2010) 187 Cal.App.4th 438, 445, fn. 2 [114 Cal.Rptr.3d 392].) "Dismissal of the action at this extraordinarily late stage of the proceedings based on settlement or stipulation of the parties is discretionary rather than mandatory." (*Ibid.*) Furthermore, a request for dismissal may be denied when a case raises an issue of continuing public interest. (*Ibid.*; *Castro v. Superior Court* (2004) 116 Cal.App.4th 1010, 1014, fn. 3 [10 Cal.Rptr.3d 865].) We exercise our discretion to deny the request for dismissal. If appropriate, the parties may effectuate their settlement and obtain dismissal of the case in the trial court following remittitur.

Thus, section 218.5 allows the prevailing *party* to recover fees if (as was the case here) any party requested fees at the beginning of the case. Section 1194, on the other hand, is a "one-way" fees statute that allows only a prevailing *plaintiff* to recover fees; a prevailing defendant does not get the same benefit. (*Earley v. Superior Court* (2000) 79 Cal.App.4th 1420, 1428 [95 Cal.Rptr.2d 57] (*Earley*).)

Prior to 2000, section 218.5 did not expressly apply only when section 1194 did not. The *Earley* decision resolved the conflict between the two sections by holding that despite section 218.5's ostensibly broad application to actions for the "nonpayment of wages," section 1194 applied to the exclusion of section 218.5 when an employee sought unpaid minimum wage or overtime compensation. (See *Earley, supra,* 79 Cal.App.4th at p. 1429.) *Earley* held that section 1194 embodied a clear public policy of enforcing California's minimum wage and overtime laws for the protection of workers. (79 Cal.App.4th at pp. 1429–1430.) Section 1194's one-way fee-shifting rule "was meant to 'encourage injured parties to seek redress—and thus simultaneously enforce [the minimum wage and overtime laws]—in situations where they otherwise would not find it economical to sue.' (*Covenant Mutual Ins. Co. v. Young* (1986) 179 Cal.App.3d 318, 325 [225 Cal.Rptr. 861].)" (*Earley, supra,* at pp. 1430–1431.) Therefore, even if the plaintiff was unsuccessful in pursuing minimum wage or overtime claims, the prevailing employer could not recover fees. (*Id.* at p. 1429.)

In 2000, the Legislature codified the holding of *Earley* by adding the second paragraph of section 218.5: "This section does not apply to any action for which attorney's fees are recoverable under Section 1194." The Legislature declared, "The amendments to Section 218.5 of the Labor Code . . . do not constitute a change in, but are declaratory of, the existing law, and these amendments are intended to reflect the holding of the Court of Appeal in Earley v. Superior Court[, *supra,*] 79 Cal.App.4th 1420." (Stats. 2000, ch. 876, § 11, p. 6511.)

## B. Kirby*'s Impact*

The issue here is: Was this an action where plaintiffs sought to recover unpaid amounts of "minimum wage or overtime compensation," in which case section 1194 would govern? We previously answered this question yes, holding that both split shift and reporting time pay fell under the ambit of section 1194. However, our answer has changed in light of *Kirby.*

*Kirby* dealt with a statute that is not at issue here—section 226.7, which provides that an employer may not require an employee to work during an IWC-mandated meal or rest period, and that the remedy for such a violation

is "one additional hour of pay . . . for each work day that the . . . rest period is not provided." (§ 226.7, subds. (a), (b).) The Supreme Court found that section 226.7 is subject to neither section 1194 nor section 218.5. (*Kirby, supra*, 53 Cal.4th 1244, 1248.) In so doing, the Court analyzed the scope of both sections 1194 and 218.5; that analysis guides our inquiry here.

*Kirby* noted that "[b]y its terms, section 1194 applies to claims for unpaid minimum wages or overtime compensation." (*Kirby, supra*, 53 Cal.4th at p. 1251.) The plaintiffs in *Kirby* argued that section 1194 should be construed to include section 226.7 because, like minimum wage provisions, section 226.7 "establishes a minimum payment amount, imposes an obligation upon employers, and is based on an important public policy." (*Kirby, supra*, 53 Cal.4th at p. 1252.) The Supreme Court rejected this argument, finding no reason when applying section 1194 to depart from the "usual meanings" of " 'the legal minimum wage' " (i.e., "the statutory or administrative floor below which an employee's compensation may not fall") and " 'legal overtime compensation' " (i.e., "the statutory and administrative obligation to pay employees one and one-half times their regular rate of pay for work in excess of eight hours a day or 40 hours a week (and double the regular rate for work in excess of 12 hours a day or in excess of eight hours on any seventh day of a workweek)"). (*Kirby, supra*, 53 Cal.4th at p. 1252.) Thus, in order for a claim to fall under section 1194, it must seek unpaid minimum wage or overtime compensation, as those terms are generally understood. (*Kirby*, at p. 1252.)

As for section 218.5, the *Kirby* court found that it did not apply in a section 226.7 action, because a section 226.7 action is not one " 'brought for the nonpayment of wages' " within the meaning of section 218.5 (*Kirby, supra*, 53 Cal.4th at p. 1255.) The Court reasoned that, rather than being an action protecting or providing wages, section 226.7 is designed to ensure that employees receive meal and rest periods; the " 'one additional hour of pay' " provided for in section 226.7, subdivision (b), is simply a remedy for a meal or rest period violation. (*Kirby*, at pp. 1255–1256.) In contrast, an action covered by section 218.5 is one "brought *on account of* nonpayment of wages." (*Kirby*, at p. 1256.)

### 1. *Split shift claims*

Turning to the direct issues here, following *Kirby*, the applicability of section 1194 to plaintiffs' claim for split shift compensation is reasonably obvious. A "split shift" claim is not the same as a claim for rest or meal period violations—Wage Order 4 explicitly excludes rest and meal periods from the definition of split shift. (See Cal. Code Regs., tit. 8, § 11040,

subd. 2(Q) ["split shift" is "a work schedule, which is interrupted by non-paid non-working periods established by the employer, other than bona fide rest or meal periods"].)

Furthermore, unlike a claim for rest or meal period violations, a split shift claim is one brought to recover unpaid *minimum wage* compensation—one hour's pay "at the minimum wage . . . in addition to the minimum wage for that workday." (Cal. Code Regs., tit. 8, § 11040, subd. 4(C).) The provision is located in the "Minimum Wages" section of Wage Order 4. (*People v. Superior Court (Laff)* (2001) 25 Cal.4th 703, 728 [107 Cal.Rptr.2d 323, 23 P.3d 563] [chapter and section headings are entitled to considerable weight in interpreting statutory language].) Other provisions in the same section directly address the most common minimum wage requirement—payment of a certain minimum wage for all hours worked. (See Cal. Code Regs., tit. 8, § 11040, subd. 4(A), (B).) Reading the split shift provision in the context of this section, the only credible conclusion is that the provision is a minimum wage regulation. (See *Catlin v. Superior Court* (2011) 51 Cal.4th 300, 304 [120 Cal.Rptr.3d 135, 245 P.3d 860] [words in a statute should be construed in their statutory context].) It meets the standard definition of "minimum wage" enunciated in *Kirby*: "the statutory or administrative floor below which an employee's compensation may not fall." (*Kirby, supra*, 53 Cal.4th at p. 1252.)

Thus, an action for recovery of split shift compensation is governed by section 1194 and accordingly is not subject to section 218.5. Although Krofta's and Katz's split shift claims were misguided and fruitless attempts to recover minimum wages that were not owed, this should not have resulted in a fees award in favor of AirTouch. A prevailing defendant cannot recover fees in an action under section 1194. (*Earley, supra*, 79 Cal.App.4th at p. 1429.)

## 2. *Reporting time claims*

We previously held that reporting time claims were also subject to section 1194. The reason for this holding was that split shift and reporting time claims have a similar utility, serving to enforce minimum pay requirements. Their function, and their intertwined relationship with overtime and minimum wage laws, was previously explained by the Supreme Court as follows: "Overtime pay is only one such example of a dual-purpose remedy that is primarily intended to compensate employees, but also has a corollary purpose of shaping employer conduct. Reporting-time and split-shift pay serve a similar dual function. . . . [¶] In addition to compensating employees, reporting-time and split-shift pay provisions 'encourag[e] proper notice and scheduling . . . [and are] an appropriate device for enforcing proper scheduling consistent with maximum hours and minimum pay requirements.' " (*Murphy, supra*, 40 Cal.4th at pp. 1111–1112.)

In light of *Kirby*, however, it cannot be held that a claim is subject to section 1194 because it seeks to enforce minimum pay requirements. (See *Kirby, supra*, 53 Cal.4th 1244, 1252.) Instead, it must seek unpaid minimum wage or overtime compensation. (*Ibid.*) A reporting time claim is not designed to seek minimum or overtime wages; rather, reporting time compensation is "at the employee's regular rate of pay." (Cal. Code Regs., tit. 8, § 11040, subd. 5(A).) Therefore, section 1194 does not authorize an award of attorney fees to an employee who prevails on a reporting time claim.

Since section 1194 is not applicable, does section 218.5 apply to a reporting time claim? We determine that it does, because an action for reporting time pay is one brought on account of nonpayment of wages. (See *Kirby, supra*, 53 Cal.4th at p. 1256.) A reporting time action differs from a claim for rest and meal break violations (which is not subject to § 218.5); the gravamen of a reporting time claim is for nonpayment of wages, as opposed to an employer's failure to provide a mandated break period. (See *Kirby*, at pp. 1256–1257 ["[S]ection 226.7 does not give employers a lawful choice between providing *either* meal and rest breaks *or* an additional hour of pay. An employer's failure to provide an additional hour of pay does not form part of a section 226.7 violation, and an employer's provision of an additional hour of pay does not excuse a section 226.7 violation. The failure to provide required meal and rest breaks is what triggers a violation of section 226.7."].)

Unlike a failure to provide a meal or rest break, it is not a legal violation to decline to put an employee to work or to furnish less than half the usual or scheduled day's work. It simply requires that the employer pay the employee for reporting time. An employee who brings suit to collect reporting time seeks to obtain unpaid wages. The claim is thus subject to section 218.5, which allows the prevailing party to recover attorney fees.

### C. *Application*

Krofta and Katz were ordered by the trial court to pay AirTouch's attorney fees in the amounts of $146,000 and $140,000, respectively. Because the trial court found that both claims were subject to section 218.5, the court did not undertake to apportion fees between those awarded for defense of the split shift claims and those awarded for defense of the reporting time claims.

As explained above, section 218.5 (the two-way fee-shifting statute) does not apply when section 1194 (the one-way fee-shifting statute) applies. Section 218.5 states: "This section does not apply to any action for which attorney's fees are recoverable under Section 1194." Since only the split shift claim was subject to section 1194, we must decide whether, in the context of section

218.5, "any action" means *any civil action* in which attorney fees are recoverable under section 1194, or whether "any action" simply means *any cause of action.*

 Either interpretation is feasible based on the language of the statute itself. "If the statutory language is ambiguous and susceptible of differing constructions, we may reasonably infer that the legislators intended an interpretation producing practical and workable results rather than one resulting in mischief or absurdity." (*City of Santa Monica v. Gonzalez* (2008) 43 Cal.4th 905, 919 [76 Cal.Rptr.3d 483, 182 P.3d 1027].) In accordance with this rule of statutory construction, we conclude that "any action" in section 218.5 refers to any "cause of action."

A contrary conclusion—that "any action" means "any civil action"—would be much more likely to result in mischief or absurdity. To take an example, Employee A, who first files one civil action for unpaid overtime compensation and then a separate civil action for unpaid regular wages, would face a potential adverse attorney fees award in the second lawsuit. Meanwhile, Employee B, who files a single civil action asserting claims for both unpaid overtime compensation and unpaid regular wages, would not be subject to any adverse fees award, even if he or she loses on both claims. Conversely, if "any action" means "any cause of action," both Employee A and Employee B are potentially subject to adverse fees awards—clearly a more practical and equitable result.

Therefore, the trial court must determine the amount of reasonable attorney fees awardable to AirTouch for defense of the reporting time causes of action, apportioning fees incurred for the separate causes of action as appropriate.[14] (See *Reynolds Metals Co. v. Alperson* (1979) 25 Cal.3d 124, 129–130 [158 Cal.Rptr. 1, 599 P.2d 83] [discussing apportionment of attorney fees]; *Akins v. Enterprise Rent-A-Car Co.* (2000) 79 Cal.App.4th 1127, 1133 [94 Cal.Rptr.2d 448]; *Erickson v. R.E.M. Concepts, Inc.* (2005) 126 Cal.App.4th 1073, 1083–1084 [25 Cal.Rptr.3d 39].)

IV. *The Denial Without Prejudice of Class Certification Is Not Appealable.*

 Code of Civil Procedure section 382 authorizes a class action "when the question is one of a common or general interest, of many persons, or

---

[14] The trial court separately awarded AirTouch costs in the amount of $1,973.23 against Krofta and $4,412.25 against Katz. Appellants only argue against the fees award and do not take issue with the award of costs. We therefore do not reverse on costs, which is, in any event, a result compelled by *Murillo v. Fleetwood Enterprises, Inc.* (1998) 17 Cal.4th 985 [73 Cal.Rptr.2d 682, 953 P.2d 858], in which a one-way fee-shifting provision was found not to prohibit recovery of costs by the prevailing defendant.

when the parties are numerous, and it is impracticable to bring them all before the court . . . ." As discussed in *Sav-On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 326 [17 Cal.Rptr.3d 906, 96 P.3d 194], "[t]he party seeking certification has the burden to establish the existence of both an ascertainable class and a well-defined community of interest among class members. [Citation.] The 'community of interest' requirement embodies three factors: (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class. [Citation.]"

An appeal from a denial of a motion for class certification is conducted under an abuse of discretion standard of review. (*Gattuso v. Harte-Hanks Shoppers, Inc.* (2007) 42 Cal.4th 554, 575 [67 Cal.Rptr.3d 468, 169 P.3d 889].) A ruling supported by substantial evidence will generally not be disturbed unless the trial court used improper criteria or relied on erroneous legal assumptions. (*Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 435–436 [97 Cal.Rptr.2d 179, 2 P.3d 27].)

We note that denial of class certification has been found proper under circumstances similar to those presented here. (See *Soderstedt v. CBIZ Southern California, LLC* (2011) 197 Cal.App.4th 133, 156 [127 Cal.Rptr.3d 394] [substantial evidence supported trial court's finding that appellants failed to meet burden of showing they were adequate class representatives].) We do not consider the appropriateness of the trial court's order denying class certification, however, because the denial was without prejudice. The court made clear that plaintiffs would be able to bring a new motion.

■■■ In most cases, appeal is only allowed from the final judgment. (See Code Civ. Proc., § 904.1.) This "one final judgment" rule is "a fundamental principle of appellate practice that prohibits review of intermediate rulings by appeal until final resolution of the case. 'The theory is that piecemeal disposition and multiple appeals in a single action would be oppressive and costly, and that a review of intermediate rulings should await the final disposition of the case.' " (*Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 697 [107 Cal.Rptr.2d 149, 23 P.3d 43].)

■■■ An exception to the one final judgment rule is found in the "death knell" doctrine. (*In re Baycol Cases I & II* (2011) 51 Cal.4th 751, 757 [122 Cal.Rptr.3d 153, 248 P.3d 681] (*Baycol*), citing *Daar v. Yellow Cab Co.* (1967) 67 Cal.2d 695 [63 Cal.Rptr. 724, 433 P.2d 732].) This doctrine provides that an order which allows a plaintiff to pursue individual claims, but prevents the plaintiff from maintaining the claims as a class action, is treated as a final judgment. (*Baycol, supra*, at p. 757.) The order is immediately appealable because it "effectively r[ings] the death knell for the class claims." (*Ibid.*) An

order that limits the scope of the class or its claims is not immediately appealable; "only an order that entirely terminates class claims is appealable." (*Id.* at p. 758.) The death knell doctrine assumes that without the possibility of a group recovery, the plaintiff may lack the incentive to pursue claims to final judgment and then appeal the denial of class certification. (*Ibid.*, citing *Coopers & Lybrand v. Livesay* (1978) 437 U.S. 463, 469–470 [57 L.Ed.2d 351, 98 S.Ct. 2454].) Thus, the doctrine only applies when class claims are terminated but the individual plaintiff's claims survive, not when a final judgment resolving all claims (including the individual plaintiff's action) will follow as a matter of course. (*Baycol*, at pp. 758–759.)

All named plaintiffs collectively moved for class certification. They now argue that the order denying their motion constituted a death knell. We disagree. The death knell has not yet sounded. The remaining plaintiffs' ability to pursue class certification has not been terminated. Because the denial order was without prejudice, the remaining plaintiffs are free to move for class certification again. (See *Chambreau v. Coughlan* (1968) 263 Cal.App.2d 712, 718 [69 Cal.Rptr. 783] ["The term 'without prejudice,' in its general adaptation, means that there is no decision of the controversy on its merits, and leaves the whole subject in litigation as much open to another application as if no suit had ever been brought."].) The advisability of following such a course of action is left for plaintiffs and their lawyers to decide.

Accordingly, since no exception to the one final judgment rule applies, we dismiss this portion of the appeal. (See *Jennings v. Marralle* (1994) 8 Cal.4th 121, 126 [32 Cal.Rptr.2d 275, 876 P.2d 1074]; *Farwell v. Sunset Mesa Property Owners Assn., Inc.* (2008) 163 Cal.App.4th 1545, 1551–1552 [78 Cal.Rptr.3d 666].)

## DISPOSITION

The portion of the judgment against Krofta awarding "costs" [*sic*] in the amount of $147,973.12 is reversed and remanded with directions to determine the amount of reasonable attorney fees awardable to AirTouch for defense of the reporting time cause of action. The portion of the judgment against Katz awarding "costs" [*sic*] in the amount of $144,412.25 is also reversed and remanded with directions to determine the amount of reasonable attorney fees awardable to AirTouch for defense of the reporting time cause of action. The judgments are affirmed in all other respects.

The appeal from the denial without prejudice of the motion for class certification is dismissed.

The parties are to bear their own costs on appeal.

Ashmann-Gerst, J., and Chavez, J., concurred.